In re ELMIRA STEEL CO.

(District Court, N. D. New York. April 17, 1901.)

1. BANKRUPTCY—ACTS OF BANKRUPTCY—FAILURE TO DISCHARGE PREFERENCE.
Under Bankr. Act 1898, § 3a, cl. 3, it is an act of bankruptcy for an insolvent judgment debtor to fail to discharge a levy on his property at least five days before the day on which it is advertised for sale, and creditors are not required to wait until a sale has actually taken place, but may file a petition, and, on the proper showing, have the sale enjoined.

2. SAME—EVIDENCE OF INSOLVENCY.
Upon the question of the insolvency of a corporation at the time of the commission of an alleged act of bankruptcy, evidence of its suspension of business and its inability to pay its debts at a time within a few weeks or months thereafter is competent, and, in the absence of other evidence, is sufficient to warrant a finding of such insolvency.

3. SAME—JURISDICTION OF COURT—SUFFICIENCY OF ALLEGATIONS AND PROOF.
A petition in involuntary bankruptcy against a corporation, which alleges that such corporation was organized and exists under the laws of New York, with its principal place of business, "since its organization," in the New York district in which the petition is filed, sufficiently alleges domicile and residence within the district since the date of organization; and where the certificate of incorporation, properly admitted in support of the allegation of organization within the state, shows such incorporation to have been more than six months prior to the filing of the petition, and designates the principal place of business of the corporation at a place within the district, it cures the defect in the petition in failing to allege the length of time of such domicile or residence, and the petition must be considered as amended in that respect.

4. SAME—PENDENCY OF TWO OR MORE PETITIONS—PRIORITY OF JURISDICTION.
General order in bankruptcy No. 6, relating to cases where two or more petitions are filed against the same individual or partnership, provides that in the former case the first hearing shall be in the district of the debtor's domicile, and in the latter on the petition first filed. It further provides that "in either case" proceedings on the other petitions may be stayed until an adjudication is made upon the petition first heard, and the court making the first adjudication shall retain jurisdiction over all proceedings therein until the same shall be closed. *Held*, that the "first adjudication" referred to, which gives the court making it prior jurisdiction, must have been made in accordance with the other provision of the rule as to the place of first hearing, and that creditors,

by filing a second petition against an individual in another district, and obtaining a first hearing and adjudication thereon, cannot thereby oust the jurisdiction of the court in the district of the bankrupt's domicile, in which a petition had been first filed by other creditors.

**5. SAME—PRINCIPAL PLACE OF BUSINESS OF CORPORATION.**

The principal place of the business of a corporation, which determines the district wherein it may be adjudged bankrupt, is the principal place of its principal business; and the principal place of business of a corporation organized for the purpose of manufacturing steel, iron and tin plate, and other metals into marketable products is at the place, within the state of its incorporation, designated as such in its articles, and where its manufacturing plant is located, rather than at a place in another state where it has an agent for the sale of its products, does its banking business, and holds the most of its directors' meetings; such matters being incidental only to its principal business or to its corporate existence.

**6. SAME.**

Where a New York manufacturing corporation, having its principal place of business and its mills in that state, ceased manufacturing, but continued to make sales of its products on hand through an agent in Pennsylvania, such fact did not operate to transfer its principal place of business to Pennsylvania, so as to give a court of bankruptcy in that state jurisdiction of proceedings against it.

**7. SAME—PRIORITY OF JURISDICTION—PROCEEDINGS IN DIFFERENT DISTRICTS.**

While under Bankr. Act 1898, § 70, a trustee is vested with title to the bankrupt's property as of the date of the adjudication, such title relates back to the commencement of the proceedings, and, as between courts of different districts, in each of which a petition has been filed, and either of which would have jurisdiction, priority of jurisdiction is determined by the date of the filing of the petitions, and not by the date of adjudication.

**8. SAME—CONCLUSIVENESS OF ADJUDICATION—TIME TO APPEAR AND PLEAD.**

An adjudication in bankruptcy against a corporation, made on the day of the filing of an involuntary petition against it, although the corporation appears and makes no objection, but admits the alleged acts of bankruptcy, is not conclusive upon creditors who do not appear. Bankr. Act 1898, § 18, which requires the issuance and service of a subpoena on the filing of an involuntary petition, and provides that "the bankrupt or any creditor may appear and plead to the petition within ten days after the return day," gives to creditors a substantial right to the limitation of a time within which they may be heard, which is not derived through the bankrupt, and of which they cannot be deprived by any act of such bankrupt, nor by the court; and they may attack the validity of such adjudication collaterally in proceedings previously instituted by them in another district.

**9. SAME—CORPORATIONS—JURISDICTIONAL ALLEGATIONS IN PETITION.**

A petition in involuntary bankruptcy against a corporation, under Bankr. Act 1898, must allege that such corporation is one of the class which may be adjudged bankrupt under section 4b. A petition which contains no allegation as to the business in which the corporation is engaged confers no jurisdiction upon the court, and all proceedings thereon, including an adjudication made without proof, except the admission of the facts alleged by the corporation, are void.

In Bankruptcy. On motion to confirm report of the referee, to whom the petition was referred, recommending an adjudication.

The following is the report of Referee Moss:

The issues referred to me as special master, under district rule 30, to ascertain and report the facts, with my conclusions thereon, arise upon the involuntary petition of certain creditors praying that the Elmira Steel Company be adjudicated bankrupt, and the answers thereto of the alleged bankrupt and certain other creditors. For convenience and brevity of refer-

ence, the several parties may be designated as hereinafter stated, and the issues upon their respective pleadings may be briefly stated as follows: .

(1) Richard G. Crawford, William T. Jones, James Bray, and Daniel F. Nelan, all of Elmira, N. Y. (hereinafter called the "Elmira creditors," or the "petitioners"), filed a petition in this court December 18, 1900, in involuntary proceedings against the Elmira Steel Company. The allegations of the petition will be more particularly discussed later. For the present it is sufficient to state that they alleged the Elmira Steel Company to be a corporation organized and existing under the laws of the state of New York, and engaged principally in manufacturing and selling steel billets and merchant iron, having its principal place of business in the Western district, at the city of Elmira; that the petitioners are creditors, their claims being for labor and services rendered to the corporation within three months prior to the filing of the petition; that the Elmira Steel Company was insolvent, and within four months prior to the filing of the petition committed acts of bankruptcy, in suffering judgments to be obtained against it and not having discharged the same within five days prior to a sale of its property under executions upon said judgments levied thereon.

(2) The Elmira Steel Company (hereinafter called the "bankrupt," which is sanctioned by Bankr. Act, § 1, and its definition of a "bankrupt" as including, before adjudication, a person against whom an involuntary petition has been filed), the alleged bankrupt, which filed an answer January 5, 1901, which, without denying any allegation of the petition, alleged that on the 3d day of January, 1901, there was filed in the district court of the United States for the Eastern district of Pennsylvania a petition against it, to which it made no defense, and upon which, on the 3d day of January, 1901, it was adjudged a bankrupt, and that upon the same day, in the said Eastern Pennsylvania district court, John N. M. Shimer and William H. Staake were appointed receivers of its properties; the answer concluding as follows: "Your petitioner, showing to the court that it has already been adjudged a bankrupt as above set forth, humbly submits itself to the further order of your honorable court." The answer is without indorsement, either of appearance by itself or by an attorney for it. There was no appearance for or on behalf of the bankrupt before me upon the trial of the issues referred.

(3) Solomon Morrison and Samuel Risman, trading under the firm name of Morrison & Risman, of Buffalo, N. Y. (hereinafter called the "Buffalo creditors"), filed an answer January 7, 1901, which, stating that they were creditors of the bankrupt, denied that the Elmira Steel Company had committed the act of bankruptcy set forth in the petition, or that it was insolvent, and averred that it should not be declared bankrupt for any cause in said petition alleged, and concluding: "This they pray may be inquired of by the court."

(4) William T. Rainey and Charles R. Ellicott, co-partners trading as William T. Rainey & Co., of Philadelphia, and George B. Newton & Co., incorporated, of Philadelphia (hereinafter called the "Philadelphia creditors"), filed separate answers, but joined in their defense before me. The amended and supplemental answer of William T. Rainey & Co., filed January 29, 1901, by permission of an order of this court of that date, alleging that they were creditors of the bankrupt, alleged that the Elmira Steel Company had its principal place of business in the city and county of Philadelphia and state of Pennsylvania, within the Eastern district of Pennsylvania, for the greater portion of six months next preceding the filing of the petition in this court, and likewise next preceding the filing of the petition in said answer mentioned, in the district court of the United States for the Eastern district of Pennsylvania; "and your respondents traverse the allegation in the petition filed in this court, to which this is an answer, that the said principal place of business had for the greater portion of six months next preceding the filing of the petition in this case been in the city of Elmira, Chemung county, New York." The answer alleged affirmatively that the Elmira Steel Company was, on the 3d day of January, 1901, adjudicated an involuntary bankrupt by decree of the district court of the United States for the Eastern district of Pennsylvania, entered upon the petition of sundry

creditors in that cause; that no appeal or bill of review had been taken from said adjudication, although more than ten days had elapsed since the adjudication was entered, and that said adjudication had then become a final adjudication of said court, fixing the questions of jurisdiction in the matter of the bankruptcy of Elmira Steel Company; that, although certain of the property of the Elmira Steel Company was in the said city of Elmira, and certain of its manufacturing operations were conducted there, its office and likewise its principal place of business were in the city of Philadelphia during the time aforesaid; and, further, that the officers resided and the board of directors held its meetings in the said city of Philadelphia, the company's books of account were kept in the said office, its manufacturing operations were directed from the said office, the products sold from there, and its moneys collected there. It alleged, further, the appointment on the 3d day of January, 1901, by the Eastern district of Pennsylvania court, of receivers of the estate of the bankrupt, and concluded as follows: "Your respondents therefore show that the adjudication entered as aforesaid by the district court of the United States for the Eastern district of Pennsylvania vested all the property, both real and personal, and the assets of every description and wherever located, of the said Elmira Steel Company, bankrupt as aforesaid, in the custody, care, and control of the said district court of the United States for the Eastern district of Pennsylvania, and is effectual to stay all further proceedings in bankruptcy in this or any other court." The answer of George B. Newton & Co., filed by permission of the same order January 29, 1901, alleging said defendants to be creditors of the Elmira Steel Company, contained no denial or traverse of any allegation of the petition in this case, but made substantially the same affirmative allegations as the amended and supplemental answer of William T. Rainey & Co. of the adjudication of the Elmira Steel Company bankrupt by the United States district court for the Eastern district of Pennsylvania, from which no bill of review had been taken, although more than ten days had elapsed since the adjudication was entered, and that said adjudication had become a final adjudication, fixing the question of jurisdiction in the matter of the bankruptcy of the said Elmira Steel Company, and the appointment by orders of that court of receivers. It alleged, further, that the adjudication by the district court of the United States for the Eastern district of Pennsylvania vested all the property, both real and personal, and the assets of every description and wherever located, of the Elmira Steel Company, in the custody, care, and control of the said district court of the United States for the Eastern district of Pennsylvania, and of the receivers by that court thereafter appointed, and was effectual to stay all further proceedings in bankruptcy in this court; that in consequence of its adjudication the district court of the United States for the Eastern district of Pennsylvania "will proceed in due and orderly course to administer all the estate, both real and personal, and wherever situate, of the said bankrupt; and that, were your honorable court now to proceed further in the present cause, with the view of entering an adjudication and proceeding in like manner to administer thereunder all the estate, both real and personal, and wherever situate, of the said bankrupt, the result would be serious confusion and complication; conflicting claims of jurisdiction between the trustees asserting title under the proceeding wherein they were respectively elected, inability to give a clear and certain title to a purchaser at any sale of property ordered by the court, and an inevitable and irreparable loss to your respondent and to the other creditors of the bankrupt." And the answer concluded as follows: "Wherefore your respondent prays that it may be allowed to intervene in these proceedings as a party to the controversy, and that the petition filed in this case for an adjudication in bankruptcy of the Elmira Steel Company, and all proceedings based thereon, be dismissed, and all proceedings remitted to the control of the said district court of the United States for the Eastern district of Pennsylvania."

These petitioners filed no replications to the answers, and it was conceded on the trial before me that it was unnecessary to do so; and the matters alleged by way of affirmative defense were controverted and litigated by proof before me. The evidence showed that the petition upon which the

alleged adjudication of the United States district court for the Eastern district of Pennsylvania was made was filed in that court January 3, 1901, and was made by the Philadelphia creditors, above named, and the National Exchange Bank of Roanoke, Va. (hereinafter called the "Pennsylvania petitioners"); that it alleged said Pennsylvania petitioners to be creditors of the bankrupt, the act of bankruptcy alleged being the same as that alleged in the petition in this court,—the allegations thereof regarding the character of the bankrupt being as follows: "That the Elmira Steel Company, a corporation incorporated by and under the laws of the state of New York, has had, for the greater portion of six months next preceding the filing of this petition, its principal place of business in the Bullitt Building, on Fourth street, between Chestnut and Walnut streets, which said place is in the city and county of Philadelphia, state of Pennsylvania, and the Eastern district of Pennsylvania." The petitioners presented before me evidence tending to support all the allegations of their petition, except with reference to the petitioners being creditors, and the amount and character of their claims, which were conceded by the defendants; but the principal evidence tendered by all the parties was addressed to the issues formed by the pleadings.

As, under the bankrupt act and general orders, an adjudication follows upon default of answer to an involuntary petition, without proof, it is only such allegations of an involuntary petition as are controverted by answer that need to be proved; and such is the provision of the bankrupt act (section 18d), which provides that an adjudication shall be made or the petition be dismissed upon determination of the issues presented by the pleadings. The issues presented here require, in their determination, the answer of two principal questions: (1) Whether the bankrupt was insolvent, and committed an act of bankruptcy, and this court has such jurisdiction that it would make an adjudication, if, no proceeding or adjudication had been had or made in the United States district court of the Eastern district of Pennsylvania. (2) If the first question be answered affirmatively, whether the adjudication by the United States district court of the Eastern district of Pennsylvania has ousted this court of jurisdiction, or furnishes ground for the dismissal of these proceedings without adjudication or the remitting of these proceedings into the court for the Eastern district of Pennsylvania. This question involves, also, the question of the jurisdiction of the United States district court for the Eastern district of Pennsylvania, and the validity of the adjudication and other proceedings in that court.

The first question is raised principally by the issue tendered by the Buffalo creditors. The act of bankruptcy alleged is easily found, if the bankrupt was insolvent. Judgments were obtained against it, under levies under executions upon which its property was advertised for sale, and within five days before such sale the same were not discharged. The sale was adjourned from time to time, and upon the filing of the petition herein, December 18, 1900, an order to show cause was granted in a motion to enjoin the execution sales, which contained a restraining order pending the motion. On the return day, December 24, 1900, the injunction was made absolute. On December 31, 1900, another injunction order was granted, restraining sales upon executions under other judgments not restrained by the first injunction order. Failure of the bankrupt to discharge these liens before sale were acts of bankruptcy, and the petitioners did not need to wait until after sale made before filing petition and enjoining sale. In re Rome Planing Mills, 3 Am. Bankr. R. 123, 96 Fed. 812.

On the question of insolvency there was some direct, and much indirect, proof. The latter was in testimony and evidence to the effect that the bankrupt shut down its manufacturing plant at Elmira, N. Y., on the 29th day of September, 1900, at which time it had 316 employés, whose wages, earned during the week ending with that date, it had defaulted; large numbers of judgments obtained against it, executions on which were levied upon its property; propositions made and negotiations conducted by Chester R. Baird, its president, looking to the re-establishment of its business and the future continuance of the company, in which he, as its president, made admissions as to its liabilities and its inability to discharge them, and in

effect saying that it could not discharge them or continue business, except by an extension of the time of payment of its indebtedness during several years; and the written admission of inability to pay its debts, and willingness to be adjudged a bankrupt on that ground, presented with the petition of the Philadelphia petitioners in the proceedings against it in the Eastern Pennsylvania district court. Some of these admissions were as of a time subsequent to the acts of bankruptcy alleged here, and some of them were even subsequent to the filing of this petition. Being evidence of insolvency at the admitted time justifies the inference of insolvency for a prior period of time, including the time of the alleged acts of bankruptcy. Inability to pay debts at a given time as evidence of prior insolvency during periods ranging from a few weeks to several months finds illustration in many cases: Baily v. Hornthal, 89 Hun, 514, 35 N. Y. Supp. 437; Carpenter v. Roe, 10 N. Y. 227; Carr v. Breese, 81 N. Y. 584; Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082; Emmerick v. Hefferan (Super. N. Y.) 9 N. Y. Supp. 801; Crossley v. Elworthy, L. R. 12 Eq. 158. All this evidence of inability to pay debts, the suspension of business, and of negotiations looking to creditors permitting future operations by the company, was material and competent, and from it, in the absence of other evidence, the fact of insolvency could be found. Davis v. Stevens, 3 Nat. Bankr. N. 131, 134, 4 Am. Bankr. R. 763, 104 Fed. 235; In re Lange, 3 Am. Bankr. R. 231, 232, 97 Fed. 197; Tuthill v. Skidmore, 124 N. Y. 148, 153, 26 N. E. 348; Terry v. Tubman, 92 U. S. 156, 160, 23 L. Ed. 537.

But I prefer to rest my decision upon the question of insolvency upon more cogent proof appearing in the evidence. Indebtedness of the bankrupt, largely in judgments, was proved to the amount of $122,884.13. Under the definition of "insolvency" in section 1 of the bankrupt act, this bankrupt was insolvent, if the aggregate of its property, at a fair valuation, was not sufficient in amount to pay that indebtedness. Three witnesses testified to the value of its property. In Mr. Arnot's opinion, its real estate was worth $125,000, and its personal property $60,000. In Mr. Doxey's opinion, its real estate was worth $70,000, and its personalty $35,000 to $40,000. In Mr. McFadden's opinion, its personal property was worth $65,000. Counsel for the Buffalo creditors asks the acceptance of Mr. Arnot's opinion; but his own cross-examination of the witness much weakened the value of that opinion, showing, for instance, the witness thinking the real estate to consist of 50 acres, when it covered only 9, and the whole testimony of the witness, whose competency was barely sufficiently shown to make his opinion admissible, shows that opinion to be but the general opinion of a person having general knowledge on the subject, but whose special information and knowledge was quite limited, and that he formed his opinion from a very general inspection and looking over of the property. Witness Doxey had owned the property, and had at one time conducted the manufacturing plant upon it. After years of negotiating for a sale, he effected a sale of it to this bankrupt: he deeding it to Mr. Baird, the president of Elmira Steel Company, who subsequently conveyed the property to the corporation. He had recently been upon the property, and had carefully estimated the quantity and value of the personal property situated thereon. Witness McFadden was the superintendent and manager of the works for the bankrupt. The property covered by his opinion of value included some property included in the property valued as real estate by the witness Doxey; and it seems to cover some merchandise, subsequently sold, the amount of which does not appear. Then, too, his opinion is based upon an estimate he made while acting as superintendent, and is more of a holding than of a selling value, and evidently was made for the purpose of a good showing. My impression, formed upon the trial from the appearance and manner of testifying of the witnesses, has been confirmed by a careful reading of their testimony; and I believe, from the whole testimony, the value of the property of the bankrupt not greater than the opinion expressed by the witness Doxey; and upon the issue made by the Buffalo creditors I have found the bankrupt insolvent as a fact.

Two elements of the first question to be determined having been solved, the third presents itself: Has this court such jurisdiction that it would make

an adjudication, if no proceeding or adjudication had been had or made in the Eastern Pennsylvania district court? It has, if the corporation be one subject to involuntary bankruptcy, and its domicile, residence, or principal place of business has been within this district for the necessary time. Upon the proof, it is such a corporation; it being principally engaged in manufacturing and selling the products of its manufacture. One of the Philadelphia creditors, William T. Rainey & Co.. denies its principal place of business to have been in this district, and alleges it was in the Eastern district of Pennsylvania. While I have found that fact in favor of the jurisdiction of this court, it may be left for discussion when considering the effect of the proceedings in the Pennsylvania court. The petition here alleges the bankrupt a corporation organized and existing under New York law, and having its principal place of business in this district. If by demurrer or motion, before proof, this petition had been attacked as not stating facts sufficient, it would have been held defective; for it fails to state any length of time during which the bankrupt has had its principal place of business, domicile, or residence within the Western district of New York. But no objection, upon the hearing before me or in the briefs of counsel for defendants, has been made to the petition upon that ground. Nevertheless, as the defect in the petition affects a question of jurisdiction, it needs to be considered, and it would be fatal to the further maintenance of this proceeding by these petitioners if it had not been supplied upon the trial. It is possible the objection has been waived by the failure to make it, and by pleading to other matters, and by the form of the denial in the answer of William T. Rainey & Co., which, traversing the allegation of the petition as to place of business, in terms treats that allegation as one that the bankrupt had its principal place of business in this district "for the greater portion of six months next preceding the filing of the petition in this case." None of the other answers traverse any allegation of this petition as to the bankrupt being a New York corporation, engaged in manufacture, and having its principal place of business in this district. But the Philadelphia creditors, by their counsel's brief attacking this petition, say that, while it alleges principal place of business as the fact giving this court jurisdiction, it does not allege domicile or residence; and, claiming the fact upon the evidence as to the principal place of business to be against these petitioners, they claim that the evidence in regard to the bankrupt being a New York corporation, which might show domicile and residence, cannot aid the allegation of principal place of business. The evidence referred to was the certificate of incorporation of the bankrupt, filed July 10, 1899, which contained the following statement: "Its principal business office is to be located in the city of Elmira, in the county of Chemung, state of New York." It was received in evidence, over objection by the Philadelphia creditors as irrelevant and immaterial. It was both relevant and material under the allegations of the petition of its being a New York corporation, engaged in manufacture and having its principal place of business in this district. It was not objected to as improper in proof of any fact not pleaded,—length of time of incorporation or place of business. Properly admitted over the only objection taken, it is competent proof to support any fact which was or might be pleaded. The averments of the petition, of the bankrupt being a corporation organized and existing under the laws of the state of New York, with its principal place of business in this district "since its organization," are sufficient as allegations of domicile and residence within this state since the incorporation of the company; and the deficiency of the petition in alleging the length of time of such residence, domicile, and place of business, has been supplied by the proof, which shows the date of the incorporation to have been more than six months before the filing of the petition, which must be considered amended accordingly. Muller v. Dows, 94 U. S. 444–446, 24 L. Ed. 207; In re Lange, 3 Am. Bankr. R. 231–233, 97 Fed. 197; West v. Smith, 101 U. S. 263, 25 L. Ed. 809; In re Strait, 2 Am. Bankr. R. 308; Neale v. Neales, 9 Wall. 1, 8, 9, 19 L. Ed. 590; In re Plotke, 44 C. C. A. 282, 5 Am. Bankr. R. 171, 104 Fed. 964, 3 Nat. Bankr. N. 122; In re Laskaris, 1 Am. Bankr. R. 480, 481.

The first question being answered in the affirmative, the second is reached: What is the effect upon this proceeding of the proceedings in the Eastern Pennsylvania district court? Most of the elements involved in the question are so connected, in law and upon the facts, that they cannot conveniently be separated in their discussion. With some facts not yet mentioned, others already stated may be repeated in a statement of the different steps taken in, and the present condition of, the two proceedings,—one in this court and the other in the district court for the Eastern district of Pennsylvania. December 18, 1900, petition was filed in this court by creditors entitled to priority for wages earned during the week of September 24-29, 1900, the right to which priority would not exist in proceedings upon petition filed later than December 24, 1900. Bankr. Act, § 64b. On the same day, December 18, 1900, by an order to show cause in a motion for an injunction, this court restrained sale by the sheriff of the property of the bankrupt at Elmira, N. Y., consisting of real estate constituting its manufacturing plant and personal property situated thereon, worth, as I have found, $110,000. December 24, 1900, upon the return of the order to show cause, this court granted an injunction restraining and enjoining the sheriff "and all other persons * * * from selling any property of the said Elmira Steel Company, at sheriff's or other sale, or from interfering in any manner with said property * * * pending the adjudication in bankruptcy of the said Elmira Steel Company herein, and thereafter until further order of this court." The injunction order was served on the Elmira Steel Company December 28, 1900, by delivery of copy to John McFadden, its superintendent and managing agent, who thereupon mailed it to Chester R. Baird, its president, at Philadelphia. Upon the legal presumption that it reached him in due course of mail, and judicial knowledge that mails from Elmira are delivered in Philadelphia on the next day at the latest, it was received by Mr. Baird not later than Monday, December 31, 1900. Another injunction order was made by this court December 31, 1900, in like terms as the first, upon papers showing levies of executions and advertised sales thereon not included in the papers upon which the first injunction was granted. When the property was levied on by the sheriff, it was in the actual custody of Mr. McFadden, superintendent and manager of the bankrupt, in whose possession it was thereafter continued, subject to such levies and to such control thereof as this court had taken by its injunction orders. January 5, 1901, copy of the injunction order of December 31, 1900, was served at Elmira on William H. Hoffman, who was sent there as a caretaker to take care of the property claimed by the Philadelphia receivers, hereinafter mentioned. This court, sitting at Elmira (Hon. John R. Hazel, District Judge, presiding), on motion of these petitioners, counsel appearing here for the Philadelphia creditors being heard in opposition, granted, without an opinion, an order appointing "temporary receivers of the Elmira Steel Company in this proceeding, with full power to seize and take charge of all the assets of said Elmira Steel Company, * * * with full power to do all other acts necessary and essential for the preservation and protection of the assets of said Elmira Steel Company pending the adjudication and appointment of a trustee or trustees herein of said Elmira Steel Company, and thereafter until further order and direction of this court"; the order providing for giving bond by said receivers, and that they might apply to the court for further direction. Said receivers thereupon qualified under said order, and by an order of this court, granted upon their application January 19, 1901, they were authorized to sell certain of the property which had been taken into their possession for the purpose of obtaining funds needed for use in defraying the expenses of their trust and to enable them to execute the duties of their trust. An order of the court, made January 15, 1901, referred to me as special master the issues raised by the answers then filed, which were enlarged, by permission of the court by subsequent order, by the amended and supplemental answer of William T. Rainey & Co. and answer of George B. Newton & Co., which, by the order permitting the filing of those answers, were included in the reference to me.

In the district court for the Eastern district of Pennsylvania the petition was filed January 3, 1901. Attached thereto as an exhibit was a written

statement, dated December 28, 1900, signed by the Elmira Steel Company, by Chester R. Baird, president, with its corporate seal attached, certifying "that the Elmira Steel Company is unable to pay its debts and is willing to be adjudged a bankrupt on that ground." On the same day (January 3, 1901) an adjudication of bankruptcy was made by that court according to form No. 12 of the forms in bankruptcy, adopted by the supreme court by general order 38, which, reciting that the petition of the Pennsylvania petitioners, naming them, having been heard and duly considered, thereby declared and adjudged the said Elmira Steel Company bankrupt accordingly. By entries in the docket book of that court of the proceedings in that matter, it appears that that adjudication was made on motion of attorney for the petitioners, "and on presentation of the admission of the bankrupt in writing of his insolvency and his willingness to be adjudged a bankrupt, and James Collins Jones, Esq., attorney for the bankrupt, being present and not objecting." By the same docket entries it appears that on February 13, 1901, on the petition of the National Exchange Bank of Roanoke, Va., an order was made amending the docket entry of January 3, 1901, so as to read: "1901, Jan. 3. And now, on motion of Hazard Dickson, Esq., attorney for the petitioner, and on consideration of the petition filed in this cause, James Collins Jones, Esq., appearing for the alleged bankrupt and stating that the alleged bankrupt makes no defense," adjudication of bankruptcy is entered, etc. From the same docket entries of that court, it appears that an order to show cause was entered directing issue of writ of subpœna returnable January 18, 1901, and that on January 22, 1901, subpœna was returned "Served January 7, 1901, on Chester R. Baird, president of alleged bankrupt." On January 3, 1901, on petition of the Pennsylvania petitioners, an order was made appointing John N. M. Shimer and William H. Staake as receivers of the estate of the bankrupt; and it appears that they subsequently had possession of the books of account of the company. It does not appear by any evidence in the case that they have taken possession of any property of value which belonged to the bankrupt.

In the situation in which these two courts of the United States, in this district and the Eastern district of Pennsylvania, have been put by these proceedings, it is urged by the Philadelphia creditors that the Pennsylvania court has obtained exclusive jurisdiction, although the petition in this court was the earlier filed. They claim that adjudication to be conclusive evidence of the existence of the facts upon which the jurisdiction of that court depended, although they admit its jurisdiction may be inquired of. They say, further, that, that court having acquired jurisdiction and made an adjudication, it should be allowed alone to administer the estate, and that, should this court proceed, there would be resulting serious confusion and complication; and they claim the earlier adjudication, and not the earlier filing of petition, determines which of the two courts has jurisdiction. As between the two courts there can be no strife for jurisdiction. No court institutes proceedings before it upon its own initiative, although after parties have come into it, claiming rights and praying its protection, it may be called upon to take some step ex mero motu. But no court can close its doors to parties who have a right to come before it, nor may it bid them depart thence without determining those rights to serve its pleasure or relieve it from the performance of unwelcome duties. The right of a party to plead his cause in court, and for deliverance made thereon according to the justice of the matter, is as great as the right of the court itself to sit, and really is the only reason for its existence. Its duty to pass judgment is not the less exacting where it sometimes involves, as it does in this case, the disagreeable task of determining the validity of proceedings in another court; and it must be assumed here at the outset that the Eastern district of Pennsylvania court intended, not merely no error in its proceedings, but no interference with or disparagement of proceedings in a sister court. If it committed any error, or acted without right, it must be believed that it was moved thereto by the parties before it, and did so without being fully informed of the papers before it or the facts disclosed by them.

But it is said that the adjudication of the Pennsylvania court is conclusive proof of the existence of the facts upon which its jurisdiction depended.

While this claim is made, counsel for the Philadelphia creditors concede that the jurisdiction of any court may be inquired of; and it is true, as urged, that a court of bankruptcy, although a statutory court, is not without dignity, and that its judgments, as those of a court of record, not only need not recite the jurisdictional facts upon which they are based, but that its judgments themselves import the existence of them. True, no judgment of any court can be attacked collaterally by one upon whose rights it does not bear, nor challenged in any other way than by proceedings in review by one directly involved by its adjudication. Claiming this court to be without jurisdiction, which these petitioners assert that it has, the Philadelphia creditors deny the right of these petitioners to attack the jurisdiction of the Pennsylvania court or the validity of its adjudication; asserting that court to have jurisdiction, as adjudged by its adjudication and upon the facts. Leaving until later the discussion of the facts and resolving the rights of the contending parties as to the two jurisdictions, jurisdiction of courts to pronounce judgments, the conclusiveness of such judgments, and by whom and where they may be questioned, may be considered. "The rule has long been settled that the jurisdiction of any court may be challenged in any other court where its judgments or decrees are relied on; * * * [and] the record of a judgment may be contradicted as to the facts necessary to give the court jurisdiction, and, if it is shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that those facts did exist." Adams v. Terrell (C. C.) 4 Fed. 796, 800, quoting from Williamson v. Berry, 8 How. 540, 12 L. Ed. 1170, and citing Elliott v. Peirsol, 1 Pet. 328, 7 L. Ed. 164, U. S. v. Arredondo, 6 Pet. 691, 8 L. Ed. 547, Voorhees v. Bank, 10 Pet. 475, 9 L. Ed. 490, Wilcox v. Jackson, 13 Pet. 511, 10 L. Ed. 264, Thompson v. Whitman, 18 Wall. 457, 21 L. Ed. 897, and Knowles v. Coke Co., 19 Wall. 58, 22 L. Ed. 70. To pronounce judgment in personam, personal service of process of the court within its territorial limits, or voluntary appearance and submission of the party proceeded against, is necessary. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. But in a proceeding in rem its judgment determines the interests in the res of persons who have been given such notice as by the course, custom, and practice of the court is deemed sufficient or has been prescribed by statute, if the res be within its jurisdiction, being in its custody or its situs within its territorial limits. Kerr v. Blodgett, 48 N. Y. 62; Dobbins' Distillery v. U. S., 96 U. S. 395, 24 L. Ed. 637; Ward v. Boyce, 152 N. Y. 191, 46 N. E. 180. In Kerr v Blodgett, the interest of creditors in an estate assigned for the benefit of creditors was held concluded by judgment in an action for accounting by the assignee; notice to all creditors to come into the action having been published in the manner provided by statute. The owner of Dobbins' distillery was held concluded by its adjudged forfeiture for violation of the revenue laws by his lessee; process of monition having been issued, by which, by publication, he was admonished to appear. As to some property and certain rights in it, its seizure may be sufficient notice to parties interested therein of proceedings instituted thereby for its condemnation or forfeiture. But it is against conscience that one's rights in a thing shall be taken from him without notice, and Ward v. Boyce held the notice must be reasonable. That case held, further, that a promissory note, whose maker was within the territorial or personal jurisdiction of the court, but whose holder was not, was not within the jurisdiction of the court. The application of these general principles, and of some others which may be stated, to the case here, will appear in its further discussion.

Claiming principal place of business for the greater portion of six months prior to the filing of petition necessary to the jurisdiction of either court, the Philadelphia creditors claim such place of business not to have been within this district, but at Philadelphia, from a time more than three months prior to the filing of the petition in this court, but that, if such fact should be found against them, then that such place of business had been changed from Elmira to Philadelphia more than three months prior to the filing of the petition in the Pennsylvania court, which would give it jurisdiction, and that though, therefore, jurisdiction depending upon place of business may be in each court at the time of the filing of the petition therein, the adjudication

first made in the Pennsylvania court should determine district of administration of the estate. This brings up for consideration the question of principal place of business of this corporation, which presents mixed questions of fact and of law.

This corporation being organized under New York law, by its certificate of incorporation declared its business to be "the manufacture of steel, iron and tin plate, and other metals into marketable products," and located its "principal business office" at Elmira, N. Y. Buying from its predecessor corporation the Elmira plant, it established its business very soon after its incorporation, which was in July, 1899. There it ran a large iron and steel mill, working day and night, week in and week out. It had 350 or more operatives, besides the office force. Its secretary treasurer had his office there. For a while it kept its bank account in an Elmira bank. The plant was a large one, with many buildings, among others, a two-storied office building. There its books of account were kept by witness Shivers, its bookkeeper. Such was the condition down to the 21st of June, 1900. At some time before, the secretary treasurer removed to Philadelphia, and on that date, under orders from Mr. Baird, the president, the books were sent to Philadelphia. Excepting that such entries as were thereafter made in those books were made in them in Philadelphia, all the business of the company continued much as it has been described. Mr. Shivers continued its bookkeeper at Elmira, and, as he testifies, made entries and kept books of record of its business down to December 10, 1900, on which day he and some eight other employés of the company, in its office at Elmira, N. Y., were discharged. They had continued in such office from the 1st of October; the mills having been shut down on the 29th of September, which threw out of employment some 316 operatives. After the 10th of December, Mr. McFadden, the superintendent, continued in charge, with one or two caretakers under him. From the beginning directors' meetings, when held, were held in Philadelphia, excepting the annual meeting, which, in compliance with New York law, was held at Elmira, which was called its office by the required notice for such meeting. Chester R. Baird, president of the company, had an office in the Bullitt Building in that city. It was there such meetings were held. From there such orders or directions as he gave as president for the conduct of the business were given. He seems to have been interested in other corporations. Nearly all that he did officially as president of this company, and much of all that was done officially by its secretary treasurer after June 21, 1900, was done at that office in the Bullitt Building in Philadelphia. That was the office of C. R. Baird & Co., which was the tradename by which Mr. Baird individually conducted a mercantile business. In that name he was the sales agent and collecting agent for this corporation, and what he did under that agency he chiefly did in Philadelphia. After the discontinuance of the bank account at Elmira, disbursements of the company for wages of employés were made with cash procured from an Elmira bank upon its discount of the company's draft on C. R. Baird & Co. For a time the company had a bank account in a Philadelphia bank. But these drafts upon C. R. Baird & Co. for funds were honored by Mr. Baird, and he, as a witness, testified that the bank balances of the company were always very small. Sales having been made, products to fill the same were manufactured, and some products were manufactured not specially to fill orders from purchasers. The directions for what particular products should be made were sent from Philadelphia, sometimes upon letter heads of the Elmira Steel Company, signed in its name by president or secretary, with the initial of the writer, but in most cases on letter heads of C. R. Baird & Co., and signed in that style. Goods upon sales being delivered at Elmira, by shipments from there, bills or invoices thereof to the customers were made out and sent to C. R. Baird & Co. at Philadelphia, whence they were sent to the customers; and, collections being made from them on account of sales by C. R. Baird & Co., notification thereof was sent to Elmira. There debit and credit entries were made in customers' accounts upon the books of the company while they were there; such entries, after the books were sent to Philadelphia, being made in them there, the data for the debit charges being furnished by the bills and invoices, still made at Elmira, where record of them was kept by press copy, before being sent to Philadelphia. After the shutting down of the works September 29, 1900,

little, if any, business was done, excepting in the care of the plant, the making of some sales and shipping of goods sold, and the adjusting of some matters of freight charges, allowances to customers for deductions, information for which was reported from Philadelphia to Elmira. After the suspension of the active operations of the plant, Mr. Baird seems to have been chiefly engaged, so far as this company was concerned, and so far as he acted for it as its president, devising schemes and making propositions to creditors, and negotiating with them for some agreement whereby the company might be reorganized or enabled to continue its existence and resume its active business operations.

Some of the foregoing statement of the facts appears in the testimony of Superintendent McFadden and Bookkeeper Shivers, and from other sources throughout the evidence, and much of it also appears in the testimony of Mr. Baird himself, which was taken in Philadelphia for use upon the trial before me. It appears very clearly from Mr. Baird's testimony that what he did with reference to at least the manufacturing and mercantile business of the company, he did in the style of C. R. Baird & Co., as its agent. Thus he testified that contracts were made with customers by the sales agents, C. R. Baird & Co., who had been such sales agents since the organization of the company; that payments for shipments were made to C. R. Baird & Co., from which was passed to the bank account in Philadelphia of the company what was needed for meeting obligations of the company, which seem to have been principally its notes given by its president or treasurer; that the contracts referred to, made by C. R. Baird & Co., as agents for the Elmira Steel Company, were signed by C. R. Baird & Co.; that the correspondence with the customers was conducted from the office of the company in Philadelphia. Being asked if on letter heads of the Elmira Steel Company or C. R. Baird & Co.'s paper, he answered: "In most cases on C. R. Baird & Co.'s paper." Again asked, "But some on each?" he answered, "I think it was all on C. R. Baird & Co.'s paper." And he testified, further, that it was signed, "C. R. Baird & Co." Being questioned further with reference to Baird & Co. as agent for the Elmira Steel Company procuring contracts and sending them to the company at Elmira, the question suggesting that he did not turn them over to himself as president before sending orders to Elmira, he said the contracts were in a general way authorized by him as president, and that a great many small orders were included in general instructions which he had given; and then, it being suggested that it would be pretty hard for him to say when he was acting as president of the Elmira Steel Company and when he was acting as agent for the company, he answered: "No; it was not hard. I acted as an officer of a New York corporation, and also acted as selling agent for that corporation, and the duties were entirely distinct." In compensation for business done as agent of the company, C. R. Baird & Co. received commissions upon sales, credited from time to time on the books to C. R. Baird & Co. Clearly, what was done by C. R. Baird & Co. was not the doing of business by the company, except as anything done by an agent is done by the principal.

Based upon their claim that the Pennsylvania court had jurisdiction by reason of the place of business being in the district, and of the adjudication therein, the Philadelphia creditors claim that the administration of the estate should be wholly in that district. Different counsel for them argue differently by their briefs. One, claiming that corporations are within the provisions of general order 6 (32 C. C. A. ix., 89 Fed. v.), claims that the first adjudication determines the district of administration. The other, claiming that corporations are not within general order 6, and that general order 7 (32 C. C. A. xi., 89 Fed. v.), does not apply to this matter,—that order applying only to cases of two or more petitions, where one alleges an earlier act of bankruptcy, while in this matter the act of bankruptcy alleged in the petition here and the earliest act of bankruptcy alleged in the Pennsylvania petition are the same,—claims that the adjudication determines the title and estate of the trustee, and that, therefore, the trustee under the earlier adjudication has the earlier right. General order 6, premising two cases, one of two or more petitions filed against the same

individual in different districts, as to which it is provided the first hearing shall be in the district of the debtor's domicile, and the other of two or more petitions against the same partnership in different courts, as to which it is provided that the petition first filed shall be first heard, provides that, "in either case," proceedings upon the other petitions may be stayed until an adjudication is made upon the petition first heard, and the court making the first adjudication shall retain jurisdiction over all proceedings therein until the same shall be closed. The first counsel claims that the word "individual" is used in the rule in the sense of "person," which, under its definition in the bankrupt act, includes corporations, and upon that bases his claim that, the adjudication made by the Pennsylvania court being the first made, that court should retain jurisdiction under the provisions of the rule. But the "first adjudication" of the rule clearly means the one made under the provisions of the rule as to the place of first hearing; and that adjudication was not made in observance of the provision of the rule requiring, in such a matter as this, if this corporation be an individual within that rule, the first hearing to be had in the district of the debtor's domicile, and a stay of proceedings upon petitions in other districts. It would seem that one who has violated that provision of the rule ought not to gain an advantage under another provision of the rule, which clearly is intended to depend upon its observance. The other counsel argues the rule not applicable, upon the claim that the term "individual" in the rule was purposely used in framing it to exclude corporations, which would have been included by the use of the word "person," which term, used in the rule, would have made its provisions relating to partnerships unnecessary, which shows, further, the term "individual" to have been intended to include only natural persons, as individuals or partnerships. This argument is made to enforce the claim that the provisions of the rule as to the place of first hearing and adjudication is not applicable to the matter here; and the same counsel well argues that general order 7 is not applicable, because that order does, as he claims, relate only to petitions alleging acts of bankruptcy on different dates,—the rule providing, in such cases, that the hearing and adjudication shall be upon the petition alleging the earlier act.

As stated, both these claims are based upon the claim of the Pennsylvania court having jurisdiction by reason of the place of business being in its district. This calls for further discussion of the question of where was the principal place of business of this corporation in fact and as a matter of law. In Re Marine Machine & Conveyor Co., 1 Am. Bankr. R. 421, 91 Fed. 630, it was held, against the contention of opposing creditors, that a Rhode Island corporation, upon the facts shown in the case, had its principal place of business in the city of New York, where its general office was, its books kept, its purchases and sales mainly effected, and all its banking business transacted, and where all of its directors' meetings had been held; its manufacturing branch of its business having beeen carried on at Warren, R. I., its works there having been closed, and all its employés discharged but one watchman and a local superintendent, five months before the petition was filed. The facts appear quite analogous to those in this case, which is distinguishable from it, however, in this: that the legality of the business done in the foreign state was not challenged in that case, as it is in this. In that case, the business in the foreign state was done by the corporation, and was its business, while in this case the business done in Pennsylvania was less the business of this corporation than it was of C. R. Baird & Co., its selling agents. The business which determines principal place of business must be the business of the corporation, and it would seem that it must be its lawful business.

The constitution of the state of Pennsylvania, of which every federal court has judicial knowledge, by article 16, § 5, provides that "no foreign corporation shall do any business in this state, without having one or more known places of business, and an authorized agent or agents in the same, upon whom process may be served." A statute, apparently passed to carry that constitutional provision into effect, introduced in evidence before me, entitled "An act to prohibit foreign corporations from doing business in Penn-

sylvania, without having known places of business and authorized agents," approved April 22, 1874 (P. L. 1874, No. 33, p. 108), provides in its first section that from and after the passage of the act "no foreign corporation shall do any business in this commonwealth until such corporation shall have established an office or offices and appointed an agent or agents for the transaction of its business therein." Section 2 provides it shall not be lawful for any such corporation to do any business in this commonwealth until it shall have filed in the office of the secretary of the commonwealth a statement, under the seal of said corporation and signed by the president or secretary thereof, showing such required facts as title of the corporation, location of its offices, and names of its authorized agents in that state, and provides, further, that the certificate of the secretary of the commonwealth of the filing of the statement shall be preserved for public inspection. Section 3 declares that any person, agent, officer, or employé of any foreign corporation, who transacts business within that state without the provisions of the statute having been complied with, is guilty of a misdemeanor punishable by fine and imprisonment. As has been shown before me, by exemplified copies of the papers, there was filed in the office of the secretary of the state of Pennsylvania, on the 2d day of January, 1901, a statement, under the hand of Chester R. Baird and the corporate seal, which, in the required form, stated the Elmira Steel Company to be a foreign corporation incorporated under the laws of the state of New York, with its principal office at Elmira, N. Y., the object of the corporation being the manufacture of steel, iron, tin plate, and other metals into marketable products; that the office of said corporation in the commonwealth of Pennsylvania had been established at Nos. 131 to 143 South Fourth street (Bullitt Building), city of Philadelphia, in the county of Philadelphia, in said commonwealth, and naming Chester R. Baird as its authorized agent. Thereupon there was issued by the secretary of the commonwealth of Pennsylvania, under the seal of his office, a paper certifying that the Elmira Steel Company had, on the 2d day of January, 1901, in pursuance of the statute referred to, filed the certificate required. The latter certificate, as being evidence of the right of a foreign corporation to do business in Pennsylvania upon compliance with its statute of 1874, is in the nature of a license to do business in that state.

Arguing against the effect of this evidence, and claiming that the statute bears upon individuals, and does not subject the corporation itself to its criminal provisions, and that it is more a question of whether the company did in fact do business in Pennsylvania than whether it was permitted by the laws of that state to do so, counsel for the Philadelphia creditors upon his brief says, further, that the statement in the certificate of the principal office of the company being at Elmira, N. Y., is not evidence upon the question of fact of principal place of business, which may be accepted. That statement was in connection with the statement of the certificate of the state of incorporation, under the laws of which its principal office was therein located where its annual meeting must be held; and that is the extent of the effect of that statement on the question of principal place of business. But counsel says, further, in his brief, that at most the evidence shows that this company made application on a certain day for registration as a foreign corporation, and for permission to do business in Pennsylvania; and he adds: "But there is nothing in the form of the certificate to show this an original application, and not the annual renewal of a former registration." This was disingenuous or not creditable to the counsel, Philadelphia lawyers. The terms of the statute in evidence provided for the filing of a certificate as a condition for a license, once for all, to do business in that state, and there is nothing in that statute suggesting that such license is only from year to year. If there is such a statute, and a lawyer, of all persons, knows the laws of his own state, the Philadelphia creditors should have offered it in evidence. The suggestion of the brief has put upon me the labor of a fruitless search for such a statute.

By repeated adjudications of the federal and state courts, too firmly settled to admit of controversy, "a corporation has its domicile and residence alone within the bounds of the sovereignty which created it, and it is in-

capable of passing personally beyond that jurisdiction." Plimpton v. Bigelow, 93 N. Y. 592, 598, citing Bank v. Earle, 13 Pet. 519, 10 L. Ed. 274; Insurance Co. v. French, 18 How. 404, 15 L. Ed. 451; Merrick v. Van Santvoord, 34 N. Y. 208; Stevens v. Insurance Co., 41 N. Y. 150. And the fact that it files a certificate under the laws of another state, and has issued to it a certificate authorizing it to do business there, does not in any way affect its residence. Remington & Sherman Co. v. Niagara County Nat. Bank, 54 App. Div. 358, 359, 66 N. Y. Supp. 560. Without attempting to solve the question, it is at least doubtful if a writ of subpœna issued out of the Eastern Pennsylvania district court, and served upon an agent or officer of this corporation in that district, would subject that corporation to the jurisdiction of that court; for it has been held that, to subject a corporation to the jurisdiction of a federal court, it must be a resident of or found within the district of the court, and that that is not effected, in the case of a corporation organized in another state, by its doing business by agents or officers within the district, because a corporate body can have no corporate existence, citizenship, or inhabitancy beyond the limits of the state by which it is created. Day v. Manufacturing Co., Fed. Cas. No. 3,685, 1 Blatchf. 628; Decker v. Packing Co., Fed. Cas. No. 3,727, 11 Blatchf. 76; Myers v. Dorr, Fed. Cas. No. 9,988, 13 Blatchf. 22; Pomeroy v. Railroad Co., Fed. Cas. No. 11,261, 4 Blatchf. 120; 1 Desty, Fed. Proc. (8th Ed.) p. 578, note. The cases which seem to have qualified this doctrine, holding a foreign corporation to be suable in a federal court in the state where it is doing business, put their decisions upon the ground that the federal court is a court of the state, within the condition of consenting to be sued in such a court, attached to the permission granted the corporation by the state to do business within it. Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853. A federal statute can breathe no life into a corporation different from that it has under the laws of the state from which it gets its being or of that in which it is suffered to come. A corporation exists only to the extent and in the manner which state laws permit. A New York corporation can have no principal place of business other than its principal office, named in its charter. People v. Barker, 87 Hun, 341, 34 N. Y. Supp. 269, affirmed in 147 N. Y. 715, 42 N. E. 725. And, under the laws of Pennsylvania, a corporation not incorporated in that state cannot have any "known" place of business therein until it has complied with the statute prohibiting foreign corporations doing business in that state "without having known places of business" therein. This corporation could not sue in any court in Pennsylvania upon contracts entered into while conducting business in Pennsylvania, before the filing under that statute of the certificate in evidence. Thorne v. Insurance Co., 80 Pa. 15. It is only by observance of the statutory conditions that a corporation has a legal existence for business purposes within the state of Pennsylvania. Lasher v. Stimson, 145 Pa. 30, 35, 23 Atl. 552; McCanna & Fraser Co. v. Citizens' Trust & Surety Co. (C. C.) 74 Fed. 597, affirmed on appeal, Id., 24 C. C. A. 11, 76 Fed. 420, 35 L. R. A. 236; Miller v. Ammon, 145 U. S. 425, 12 Sup. Ct. 884, 36 L. Ed. 759. Incidentally, this is to be considered upon any question of transfer of this bankruptcy matter from this district to the Eastern district of Pennsylvania, for that is a question of convenience of parties, and how their rights may be best promoted (Bankr. Act. § 32), because, under the bankrupt act (section 23b), a trustee in bankruptcy of this corporation cannot sue in any court where the corporation could not sue.

The law and the courts of Pennsylvania say to an uncertified foreign corporation, "You have no business in this state," which use of the word "business" falls within its definition, according to the Standard Dictionary, as being that which one has the right to do, and which it defines—First, as a pursuit or occupation, and, second, as any occupation connected with the details of trade or industry or commercial affairs, as the banking business. Now, the business of this corporation was manufacturing, and selling its manufactures, of iron and steel. That so much, or nearly all, of its banking incident to that business was done in a certain place, determines it as its principal place of business, is to say that a corporation organized for manufacture at one place may, by banking at another, determine its place of

banking as its principal place of business; and so it may, if banking becomes its principal business, but in that case its principal business would no longer be manufacturing, but banking, and a corporation whose principal business is banking may not be adjudged bankrupt. Clearly, the principal place of the business of a corporation, which determines the district wherein it may be adjudged bankrupt, is the principal place of its principal business. In the case of the corporation before me, all that was done by it in Pennsylvania was but incidental to what it was engaged in doing at its principal business at Elmira, excepting that some things were done in Pennsylvania incidental to its corporate existence, as the holding of directors' meetings and the like, which cannot be said to be the business of the corporation, intended by the bankrupt act. All corporations are alike in that kind of business, and what is done in such meetings does not determine the character of the business of the corporation which makes it, or makes it not, subject to being adjudged bankrupt. Although directions may proceed from thence, compliance with which, in practical results of such directions, may change the character of the business, such meetings may act on the business of the corporation, but their transactions are not the business of the corporation. This is practically recognized by the learned counsel for the Philadelphia creditors, who well states on his brief, with reference to the annual meeting held in Elmira, that it "was incidental to the corporation's existence, rather than to its business operations." The principal business of this corporation, being that which it was doing at Elmira, determines Elmira as the principal place of its business.

But it is true that, after the suspension of its principal business and the shutting down of its works at Elmira, this corporation did not do much business. Its principal business was discontinued; but its principal property was at Elmira, and thereafter its principal business was the care of that property, and necessarily at that place. There its superintendent remained, in charge, custody, and care of that plant; and he was not the less engaged in the business of the company because its property was subjected to levies under executions upon judgments rendered against it at that place. Those very liens and hostile acts made his business all the more onerous and important. During this time, as already noticed, the chief business of the principal officer of the company, its president, at Philadelphia, seems to have been devising and negotiating for schemes of resumption of business through some settlement or compromise with creditors; but it cannot be that negotiations for the prolongation of its existence can be said to be the principal business of a corporation, so as to make the place of their promulgation its principal place of business for the purposes of the bankrupt act. But sales were made in Pennsylvania of the manufactured products of this company, and the question may be asked, was not that the business of this company? Upon the facts, as already shown by reference to the testimony, those sales were made by C. R. Baird & Co., selling agents for the company. In that the company was not doing business in that state, and what C. R. Baird & Co. did as its agents they might lawfully do, notwithstanding the prohibition of the Pennsylvania statute against the corporation doing business in that state until obtaining license by filing certificate. Just that distinction has been made by the Pennsylvania courts. If those sales were made while the corporation was doing business in that state, the purchasers have a complete defense against suits for purchase price, even as against the trustee in bankruptcy of the corporation, who has no right of action upon those contracts which the corporation itself could not enforce. Having a sales agent in Pennsylvania, in C. R. Baird & Co., was not doing business by this corporation in that state. Mearshon & Co. v. Pottsville Lumber Co., 187 Pa. 12, 40 Atl. 1019; Wolff Dryer Co. v. Bigler, 192 Pa. 466, 43 Atl. 1092.

The fact of principal place of business being found against the contentions of the Philadelphia creditors, the question arises of the effect of the finding upon the Pennsylvania adjudication and the jurisdiction of the court making it. But, before considering that question, another claim of counsel for the Pennsylvania creditors, that the adjudication, and not the filing of a petition in bankruptcy, determines the date of the accruing of the rights of a trustee, and, therefore, that the trustee under the earlier adjudication has

the earlier right, now calls for attention. It is true that under the bankrupt act (section 70a) the trustee, upon his appointment and qualification, is vested with the title of the bankrupt as of the date of the adjudication; but by the same section the title with which he is so vested is the title to property which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him. Under all the provisions of the bankrupt act, it is very clear that the date of filing of the petition is the point of cleavage. In re Lewis, 1 Am. Bankr. R. 458, 460, 91 Fed. 632; In re Appel, 4 Am. Bankr. R. 722, 103 Fed. 931. Property thereafter acquired does not come under the jurisdiction of the court adjudicating upon that petition. Debts not then absolutely owing are not provable for the purpose of distribution out of that property. That is the date from which all periods of time specified in the act or to be adopted on principles of equity (In re Wise, 2 Nat. Bankr. N. 151, 155, 156) are to be computed; and it is upon and by filing a petition with it that a court is given jurisdiction to proceed in a particular matter. The learned counsel for the Philadelphia creditors have, with much skill and great ingenuity, argued for a distinction between the bankrupt act of 1898 and that of 1867, claiming that because under the former act title was as of date of filing of petition, while under the latter act it is as of date of adjudication, they base their claim that the date of the adjudication should determine priority of administration as between different courts; claiming, also, that the decisions under the prior act are not applicable to similar ones arising under the present act. While congress, in its wisdom, has by the present act postponed the taking of title by the trustee to a date subsequent to the filing of the petition, nevertheless the property, of which he takes title, is, as already shown, the property existing at the date of the filing. Under both acts, the bankrupt estate, which the bankrupt court administers, is determined by the date of the filing. Therefore it would seem that cases arising under the former act are equally applicable to cases arising under the present one.

A case arose under the act of 1867, in which two petitions were filed: the earlier one in the district court of New Jersey, and the later one in the district court of the Southern district of New York, in which the earlier adjudication was made. It appeared that this adjudication was consented to by the bankrupt, and that he and the petitioning creditors knew of the pending proceeding in New Jersey. The adjudication was set aside by the court which made it, on the ground that there should be but one, and that by the court in which the petition was first filed. Otherwise, the court said, "The petitioners might be deprived of any benefit of their earlier petition." And it was doubted in that case whether general order 16 under that act, which was substantially like general order 6 under the present act, would or could apply when any substantial injustice would be done to the petitioning creditors in the earlier petition by reason of the petition by or against the bankrupt in the district of his domicile being later in time. In re Brown, Fed. Cas. No. 1,982, 19 Nat. Bankr. N. 270. The district court "in which the petition is first filed ought to be accorded exclusive jurisdiction over the case." This is from the syllabus of a case where the court impliedly condemns a party proceeded against in two courts, who lies silently by and does not call the attention of the court in which he is secondly proceeded against that prior proceedings are pending in another. This is the more pertinent where the debtor is enjoined in the first proceeding from in any manner interfering with his property. In this case, the debtor not only did not give the Eastern Pennsylvania district court that information, but voluntarily and in writing consented to be adjudged bankrupt by it; the direct and intended effect of which would be to take property out of the jurisdiction of this court, which the bankrupt was enjoined by this court from in any manner interfering with. The same case referred to, but upon a hearing in another court, said that petitioning creditors, obtaining an adjudication, acquire in a proper case an equitable lien on all the property and estate of the bankrupt from the time of the filing of their petition, and have an interest in protecting it from embarrassment, complication, and waste, or withdrawal from the control of the court, and especially in

preventing the administration of any part of the assets from being transferred under the forms of law, by collusion between the debtor and other creditors, to another and distant forum. It is not intended to intimate that in this case there has been any collusion. Indeed, nothing has appeared from which the suspicion of an inference thereof can arise. But the bankrupt did, by its admission of inability to pay debts, facilitate the Pennsylvania adjudication, the intended effect of which would be to transfer its property from this state to that. and it did so while it was enjoined by this court from in any manner interfering with that property. Again let it be said that it is not intended to intimate any intended violation by any officer of this bankrupt of the injunction of this court. The facts are that, while the proceeding in this court was pending, a motion was made for an injunction, pending which disposition of the property of the bankrupt by the sheriff was stayed. The motion was to enjoin all persons. That motion was to be heard, and it was heard and decided, on the 24th of December. On the 28th it was served upon the bankrupt corporation, by service on its managing agent. On the same day the corporation, by its president, executed the consent to be adjudged bankrupt. Before the 3d day of January, 1901, he had information of the injunction. On the 3d day of January, 1901, that consent was put in use by the Pennsylvania petitioners, and a lawyer appeared in that court as attorney for the alleged bankrupt, "not objecting." If he had information of the proceedings in this court, respect for that court would seem to have called for his disclosure of them to it. The case referred to was one where the petition was first filed in a Massachusetts court, then in a court in Connecticut, and then in the Southern district of New York. It was several times before the court, and the reference is to the several decisions. In re Boston, H. & E. R. Co., Fed. Cas. No. 1,678, 9 Blatchf. 409; Id., Fed. Cas. No. 1,677, 9 Blatchf. 101. In the earlier decision, approved and followed in the later, the rule obtaining in equity as to the conduct of courts of different jurisdictions, the one later called upon yielding to the one first invoked, was said to be peculiarly applicable to courts of the same jurisdiction, like district courts of the United States, created by the same statute and administering the same law; and as between two such courts it was said: "It would be the duty of the other district courts to yield the control and direction of the entire proceedings to that one whose jurisdiction was first invoked, and whose power is ample to accomplish all the purposes of the law and protect the rights of all parties interested, under the authority of the same act which governs each of them. * * * Without this, it is difficult to see how the law can be safely, uniformly, and legally administered. On the appointment of an assignee, all the property of the bankrupt is by express terms vested in him by the assignment made; and such assignment relates back to the commencement of the proceedings. [As has been shown, the trustee's title under the present law, as of the date of the adjudication, relates back to the commencement of the proceedings, so as to take the property in the condition in which it existed on that date.] When, therefore, one court having jurisdiction has adjudged a debtor a bankrupt, appointed an assignee, and executed the assignment, nothing of the property of the bankrupt remains in him to be taken or administered by another tribunal. All is vested in the assignee appointed by the other, as of the time when the first petition was filed." In re Boston, H. & E. R. Co., Fed. Cas. No. 1,677.

From the time of the filing of the petition here, and the order restraining interference with it, the property of this bankrupt was in the prehensory power of this court, as fully as if it were in the actual and visible presence of the court, and consequently under its exclusive control, and consequently not affected by anything that might be attempted to be done with it, either by a creditor levying execution upon it out of a state court, or attempting to put it into the control of another federal court, by filing a petition therein, or by the bankrupt by consenting to an adjudication in such other court, or the appointment by that court of receivers of its property. Byrd v. Harrold, Fed. Cas. No. 2,269, 18 Nat. Bankr. R. 433; Phelps v. Sellick, Fed. Cas. No. 11,079, 8 Nat. Bankr. R. 390; Davis v. Anderson, Fed. Cas. No. 3,623, 6 Nat. Bankr. R. 145; In re Steadman, Fed. Cas. No. 13,330, 8 Nat. Bankr. R.

319. "All the estate and property of the bankrupt, and all his right and title to and interest in property, whether incumbered or unincumbered. are in custodia legis, and under the sole and exclusive jurisdiction and control of the bankrupt court in which the proceedings are had, pending the proceedings, from the filing of the petition for adjudication to the close of the proceedings." Phelps v. Sellick, Fed. Cas. No. 11,079. The rule in equity governing the conduct of two or more courts with respect to the same controversy, stated with citations of authorities in Re Boston, H. & E. R. Co.. supra, finds illustration in later cases. "Where the object of two legal proceedings is the same, convenience, as well as a proper regard for the rights of debtor and creditor, requires, if possible, that the fund in which both are interested should be subjected to diminution by one litigation only, and the parties spared the unnecessary labor and expense of conducting two controversies over the same matter. It would seem, also, that, if both tribunals whose interference has been invoked have equal or concurrent jurisdiction. it should be continued to be exercised by that one whose process was first issued. It is well settled that to secure this end an order may be made, by the court whose process was first issued. restraining proceedings in all but one action, whether they are pending in that court or before other tribunals." Schuehle v. Reiman, 86 N. Y. 270, 273. It is a well-established rule that where two courts have taken jurisdiction of the same matter, the courts being of equal or concurrent jurisdiction, the tribunal which first obtains jurisdiction of the subject-matter and of the persons retains, and should continue to exercise, that jurisdiction. Garlock v. Vandevort, 128 N. Y. 374, 379, 28 N. E. 599.

Creditors filing a petition acquire thereby an equitable lien, as was held in Re Boston, H. & E. R. Co., supra, which, in this case, is a lien for the enforcement in distribution of the bankrupt's estate of a right to priority of payment of wages earned within three months prior to the filing of that petition, but not within three months prior to the filing of the petition in the Pennsylvania court. Surely these creditors should not be barred of that right by the giving effect to the Pennsylvania adjudication, as barring an adjudication in this proceeding, as claimed by counsel for the Philadelphia .creditors, unless the law compels it. But, as already shown, not only are questions of who are creditors, and upon what amounts of provable debts entitled to distribution, determined by the date of the filing of the petition, but also the question of what property is taken by the trustee. Intermediate the filing of this petition and the filing of the Pennsylvania petition. the estate may have changed. Liens upon it, not good as against the petition in this proceeding, may have ripened into full force against the second petition; and preferential payments may be recoverable by the trustee under the first petition, which, by reason of lapse of time, may not be by a trustee under the second petition. These facts are not drawn from the evidence in this case, but suggested as possibilities which would, in any case, make the estate of a bankrupt, and the amount of the provable claims against it, greater or less upon different dates. For a trustee takes the estate of a bankrupt in the same plight and condition which the filing of the petition finds it in, and subject, not only to legal liens, but to equities and equitable rights existing against it. Yeatman v. Institution. 95 U. S. 764, 766, 24 L. Ed. 589. This court has jurisdiction, if for no other reason, because of the domicile and residence of the bankrupt. If the Eastern Pennsylvania district court has jurisdiction by reason of principal place of business, then the trustee appointed in that proceeding must take the estate in the plight and condition it was in on the date of the filing of the petition in that court: that is, subject to the equitable lien of these wage owners to priority of distribution, .enforceable under the petition in this court, but which priority of distribution they would not have the right to in the administration of the estate in that court, but only through an adjudication and administration in this court. This is weighty reason for an adjudication and administration in this court, even though the Eastern Pennsylvania district court had jurisdiction by reason of principal place of business. That has been found against the Philadelphia creditors as a fact, but they say the adjudication

of that court upon that subject is conclusive. This brings up again that question, and the question upon whom, if anybody, is it conclusive?

The Pennsylvania adjudication was made upon petition of certain creditors in a proceeding in which the bankrupt appeared by attorney, by whom it stated it made no defense. It may be that by waiver, as by a voluntary appearance and submission, or, being subjected to process, by not defending, or by joining in the proceedings and taking benefits under it, an adjudication would become conclusive as against parties so acting, although the necessary jurisdictional facts do not exist; and for this there is respectworthy authority. In re Clisdell, 4 Am. Bankr. R. 95, 101 Fed. 246. If so, it would seem, upon general principles, that the doctrine is applicable only under the principle of estoppel. Under the constitutionally conferred power to establish uniform laws on the subject of bankruptcies (Const. art. 1, § 8, subd. 4), congress may exercise or decline the power as the wisdom of that body shall decide. To the extent that it does exercise the power, and to that extent only, are matters in bankruptcy taken out of the general cognizance of state law and judicial procedure. It is only such matters as congressional legislation includes that come within the purview of a federal bankruptcy system, and are within the jurisdiction of the courts administering it. Cooley, Const. Lim. 294: Sedg. St. & Const. Law, 641; Smith, St. & Const. Constr. § 214; Story, Const. §§ 1, 114; Sturges v. Crowninshield, 4 Wheat. 122, 195, 196, 4 L. Ed. 529); Bank v. Smith, 6 Wheat. 131, 5 L. Ed. 224; Ogden v. Saunders, 12 Wheat. 213, 257, 278, 279, 281, 6 L. Ed. 606. And it is only those matters which under congressional legislation are within the purview of the bankrupt act that are within the jurisdiction of its courts. In re Stowell, 16 Abb. N. C. 90, 24 Fed. 468. Matters of which a bankrupt court has jurisdiction are those in which the bankrupt has his principal place of business for the required time within the district of the court (Bankr. Act, § 2), and consent will not confer upon a court jurisdiction over a matter which is not within its general jurisdiction. Oakley v. Aspinwall, 3 N. Y. 547. If, notwithstanding these weighty authorities, the Eastern district of Pennsylvania court had jurisdiction, although the domicile and residence of the bankrupt was in this district, and its principal place of business, as a matter of fact, was not within that district for the required time, and its adjudication, as being the adjudged existence of that fact by that court, is conclusive upon the bankrupt, which appeared by attorney in that court and made no defense, is it conclusive upon other parties? The Philadelphia creditors claim it to be conclusive, not only upon the bankrupt and the Pennsylvania petitioners, but also upon all other creditors of the bankrupt, including the Elmira creditors, petitioners here. Is this so?

An involuntary bankruptcy proceeding is not a mere suit inter partes. It rather partakes of the nature of a proceeding in rem, "in which every actual creditor has a direct interest" in the res. In re Boston, H. & E. R. Co., Fed. Cas. No. 1,677. How jurisdiction of parties in interest, such as creditors, can be obtained, is fixed by section 18 of the bankrupt act. By that section it is provided that when a petition for involuntary bankruptcy is filed, there shall be issued a writ of subpœna, returnable within 15 days, within 10 days after the return day of which, or within such further time as the court may allow, the bankrupt or any creditor may appear and plead to the petition; and, if no pleadings have been filed within such time by the bankrupt or any of his creditors, the judge shall thereafter make the adjudication or dismiss the petition. The adjudication of the Eastern Pennsylvania district court was made on the day of the filing of the petition therein. The Philadelphia creditors cite In re Columbia Real-Estate Co., 4 Am. Bankr. R. 411, 101 Fed. 865, to the effect that, when an adjudication in bankruptcy has been made, it concludes all collateral inquiry as to whether the corporation was of a class subject to be adjudged a bankrupt; for it will be presumed that the court heard and determined that question, and that it was not necessary to set out upon the face of the record the facts or the evidence upon which its conclusion was reached. But, as already shown above, even though the record recite the existence of these facts, and adjudge them to exist, the judgment may be challenged by any one who can attack collaterally. The case held, further, that when an adjudication follows on the day of the filing of an involuntary petition, upon the appearance of the alleged bankrupt

and admissions by it of the allegations of the petition, it will not be set aside upon application of a stranger, who in that case was one claiming title to property really owned by the bankrupt, as void for want of jurisdiction, when neither the bankrupt nor creditors object to the decree. In its opinion, the court says: "The essentials of a valid judgment are jurisdiction of the parties and of the subject-matter. The latter is conferred by law; the former by service of process, or in some other manner authorized by law, as by the voluntary appearance of the party during the progress of the proceedings." Now while, under section 18 of the bankrupt act, jurisdiction of the bankrupt and of creditors may be obtained by voluntary appearance, it is only of him who so appears that jurisdiction is thereby obtained. Such appearance by one does not give jurisdiction of the other. The appearance of the Elmira Steel Company gave the Eastern Pennsylvania district court jurisdiction of it, but did not of its creditors who did not appear. Jurisdiction of them could be obtained only by lapse of time, limited in the manner prescribed by section 18. Until that time had expired, the court had, and could have, no jurisdiction to pass judgment against them; and the adjudication made before that time was void as against them, for want of jurisdiction over them; and, they being parties directly affected in their rights, remedies, and property, they are not strangers; and the adjudication is subject to their attack whenever and wherever it is asserted against them. What the court says in Re Columbia Real-Estate Co., at page 969, 101 Fed., as to the necessity of creditors coming in and answering, is but obiter. Only he is required to attack directly who has been subjected to the jurisdiction. True, in a proceeding in rem, personal interests in the res may be adjudicated upon, but the parties to be affected thereby must have reasonable notice, following the procedure established by statute, if there be any, under the principle of Dobbins' Distillery v. U. S., and other cases, supra.

The provisions of the bankrupt act, which are in derogation of the common law, under which, by proceedings in invitum, parties are against their consent deprived of rights, must in their interest be construed strictly, and, as so construed, closely followed. This was said of composition proceedings and their effect upon creditors; but the doctrine is equally applicable to involuntary proceedings for an adjudication and its effect upon creditors. In re Rider, 3 Am. Bankr. R. 178, 96 Fed. 808. Counsel for the Philadelphia creditors argue that the provision of section 18, under which creditors may appear and answer, is permissive, and not mandatory. But this overlooks the fact that the permissive character of the language is with reference to the creditor, and not the court. When the term "may" is with reference to the conduct of a court or officer, and it is coupled with an interest in an individual, it will be read "must" at his instance, and what the statute says a party may do the court must give him the statutory opportunity to do; and this right of a creditor to answer is not by derivation from his debtor, the bankrupt. Under the bankrupt act (section 3d), whenever an alleged bankrupt denies an allegation of bankruptcy, it is his duty to attend at the trial with his books, etc., and in case of his failure to do so "the burden of proving his solvency shall rest upon him." Now, again: When his creditor makes the denial, upon whom is the proof, if the debtor does not appear? Does the creditor defending defend in his own right, or through the debtor by representation, and by derivation from the debtor? If a creditor can defend only by derivation from his debtor, then it may well be that voluntary appearance of the debtor will confer jurisdiction over the creditor; but, if that be claimed, there is no logical escape from what must follow, the nonappearance of the debtor must equally affect the creditor. So that, if a debtor deny insolvency and fail to attend the trial of the issue, a creditor, who is also denied it, is bound to prove solvency under the provisions of section 3d. The statement of the proposition refutes it, and shows that the right of a creditor under section 18 to oppose the involuntary adjudication of his debtor as bankrupt is not derivative from the debtor, but entirely independent of the debtor, and therefore that, until jurisdiction is obtained—matures—over the creditor, no adjudication can be made valid to affect his rights; and such jurisdiction is obtained only when 10 days have elapsed after the return of a subpoena issued under section 18. It is by that subpoena and the fixing of its return

day that the length of the day in court granted by the statute to a creditor is determined, and that day in court extends for 10 days after the return day of the subpoena. But counsel for the Philadelphia creditors say that the statute makes no provision for notice to creditors except after adjudication, and that only after adjudication in an involuntary case, and the preparation of the schedules in the manner provided by the statute in such a case, can it be known or determined to whom, as creditors, notices under the statute are to be given. But he is in error in this; for by the statute proceedings under even an involuntary petition cannot be dismissed without notice to creditors. Bankr. Act, § 58a. And this court could not dismiss these proceedings even upon the consent of these petitioners, or upon the consent of a majority of this bankrupt's creditors, so long as one creditor should object. In re Cronin, 3 Am. Bankr. R. 552, 98 Fed. 584. Again, counsel for the Philadelphia creditors say that the subpoena is solely to bring the alleged bankrupt into court, which, being for his benefit, he can waive. But it is more than that. By it the length of the day in court of the creditors is fixed. It may be that the bankrupt can shorten his day, but how can he shorten the day in court of the creditors? But counsel for the Philadelphia creditors say, further, that no provision is made for notice to the creditors of the proceedings instituted by involuntary petition. And it is true that the statute does not provide for other notice than the filing of the petition furnished. But that is a record at all times open to public inspection of a court, of whose proceedings the public may be deemed to have knowledge. Like the record of a deed, or a recorded lis pendens, it is a public notice; and it may well be that congress had in mind, what the court has judicial knowledge of, that in these days of commercial activity, commercial agencies give daily information to the mercantile public of all judicial proceedings against failing debtors. At least, the statute means that by waiting, after the filing of the petition, creditors shall have an opportunity to obtain information of the institution of the proceedings, which will lead to a seizure of the property of their debtor, and of consequent judicial proceedings affecting their rights in it.

It is a rule that, in statutory proceedings in derogation of the common law to devest one of his property, every requirement of the statute having even a semblance of a benefit to the owner must be complied with in order to devest him of his title. Ellwood v. Northrup, 106 N. Y. 172, 12 N. E. 590; Battell v. Torrey, 65 N. Y. 294; Stilwell v. Swarthout, 81 N. Y. 109; Insurance Co. v. Barnard, 96 N. Y. 525. As already shown, involuntary proceedings in bankruptcy are proceedings in invitum, to the extent that they devest, not only the title of the bankrupt, but as well liens as remedies of creditors. The taking of property without due process of law, prohibited by the constitution, is the taking of property not according to the procedure prescribed by the law. While that prohibition of the constitution against taking property without due process of law must, as a prohibition against legislation, yield to the constitutionally conferred power upon congress to establish a uniform system of bankruptcy, it does furnish a rule of construction of legislation establishing such system of bankruptcy, and a test for procedure under that legislation. So that all proceedings under the statute must not only depend upon the existence of the facts which by the statute are necessary to confer jurisdiction in the particular court, but those requirements of the statute which prescribe a course of proceeding, and a due process of law must be complied with by that court in making its decree. Where it is a provision of the statute that creditors in an involuntary proceeding shall have a day within a time to be limited by certain proceedings, it cannot be said that they have lost that day where the time has not been so limited. The only way in which such time can be limited under section 18 is by the issuing of a writ of subpoena, within 10 days after the return day of which the creditors may appear and answer. Any adjudication of bankruptcy made before the expiration of that time, it would seem, must come within the condemnation of the principles referred to.

It has been held that the statutory time under section 18 cannot be enlarged by stipulation or agreement between the petitioners and the alleged bankrupt; and, upon the reasoning of the decision, the converse must be true, so that the consent of the alleged bankrupt, as against creditors other than the petitioners, cannot shorten their time. In re Simonson, 1 Am. Bankr.

R. 197, 92 Fed. 904. And it has been directly held that, because a corporation cannot voluntarily petition, it cannot, by appearing in response to an involuntary petition against it, confers jurisdiction to adjudge it bankrupt, prior to the time within which creditors have the right to appear and join issue. In re L. Humbert Co., 4 Am. Bankr. R. 76, 100 Fed. 439. In that case it was held that under section 18 "the right to contest the facts upon which the adjudication is asked is secured, not only to the alleged bankrupt, but also to any of the creditors; · and to that end it is provided that the bankrupt, or any. creditor. may appear and plead to the petition within 10· days after the return day, or within such time as the court may allow. As the 10-day period allowed for pleading to the petition dates from the return day, it is necessary that this day be fixed by the issuance of a writ of subpœna, in which the return day is named. * * * The return day having thus been fixed, then the case must remain in the clerk's office until the expiration of the 10 days allowed to the bankrupt or any creditor to appear and contest the facts averred in the petition. A waiver on the part of the bankrupt of this period of time cannot deprive creditors of the right to appear in opposition to the petition. and until that time has elapsed it cannot be known whether a contest will or will not be made on behalf of the creditors. * * * The clerk cannot send a case of involuntary bankruptcy to the referee for adjudication, except in cases where no issue is made by the bankrupt or any creditor upon the facts averred in the petition, and the judge is absent from the district. * * * And these necessary conditions cannot be ascertained except by fixing a proper return day in the mode already pointed out, and then awaiting the lapse of the 10-day period allowed for filing pleadings in opposition to the petition for adjudication." Of course, what is necessary before a reference to a referee for adjudication when the judge is absent is as necessary before adjudication by the judge when he is present.

All questions requiring consideration in this petition have now been given attention, excepting a further objection made by the Elmira creditors, these petitioners, to the validity of the adjudication of the Eastern Pennsylvania district court, which objection extends, also, to all proceedings in that court subsequent to the filing of the petition. The Elmira creditors object that the Eastern Pennsylvania district court was wholly without jurisdiction, because, as they claim, the petition filed in that court did not show this corporation to be such a corporation as the bankrupt act brings within the purview of the bankruptcy system established by it. Counsel for the Philadelphia creditors assert that the Eastern Pennsylvania district court "acted upon a petition which was regular in form, contained all the requisite jurisdictional averments, and stood untraversed." But they well say that, "since a court of bankruptcy is purely statutory in its origin, whatever power, authority, and jurisdiction it may have are wholly and solely derived from the bankrupt act, its power, authority, and jurisdiction are expressly conferred upon it by statute, or necessarily implied in order to exercise the expressed powers." And in another place in their brief they say: "The bankruptcy court, deriving its jurisdiction from statutory enactment, must justify every act in the exercise of that jurisdiction by the statute itself." While these quotations are taken out of their setting, and are used by the counsel in support of other arguments than the conclusions to which they are here cited, they are, as statements of general doctrines, illustrations of what must be the agreement of legal minds upon fundamental principles. It is not to every individual, nor to every corporation, that congress has extended its most recently established system of bankruptcy. While all individuals may be voluntary bankrupts, some, as farmers and wage earners, may not be made involuntary bankrupts. No corporation can be a voluntary bankrupt, and only manufacturing or trading corporations can be made involuntary bankrupts. Bankr. Act, § 4. By its provisions declaring who may be adjudged involuntary bankrupts, the statute declares that any natural person, except a wage earner or farmer, may be, and that any corporation engaged principally in manufacture, trading, printing, publishing, or mercantile pursuits may be. When a debtor is proceeded against by involuntary petition, it would seem that the general rules of pleadings would require that it be alleged that the debtor is within the class subjected by the act to such proceedings. It may be that, as

against individuals, the petition might not need to allege the debtor not a wage earner or farmer, because the act subjecting individuals to involuntary bankruptcy excepts wage earners and farmers, and possibly the debtor, if he be a wage earner or farmer, should bring himself within the excepted class by allegation and proof of affirmative defense. But the statute does not except certain corporations from its provisions subjecting corporations generally to involuntary bankruptcy, but, from among all corporations, selects a few which may be so subjected. Therefore all rules of pleading should require allegation and proof by the petition that a corporation proceeded against is one which by the bankrupt act may be. But it has been held that, even as against an individual, a petition in involuntary bankruptcy needs to allege that the debtor is not a wage earner or farmer. In re Taylor, 4 Am. Bankr. R. 515, 42 C. C. A. 1, 102 Fed. 728. And where jurisdiction depends upon a fact, as residence in a proper case. so necessary is it that the petition state the fact that a discharge granted in a case where the petition lacks that averment is invalid and affords no defense in an action upon a debt which otherwise would be discharged. Johnson v. Ball, 15 N. H. 407. So it has been held that, to sustain proceedings in involuntary proceedings, the petition must allege and the proof show that the corporation is authorized by its charter, and in fact principally engaged in the kind of business named in the act in declaring what corporations may be adjudged involuntary bankrupts. In re Chicago-Joplin Lead & Zinc Co., 4 Am. Bankr. 712, 104 Fed. 67. And there can be no involuntary bankruptcy proceedings against a corporation not engaged principally in manufacturing, trading, or mercantile pursuits. In re Elk Park Min. & Mill. Co., 4 Am. Bankr. R. 131, 101 Fed. 422.

The petition in the Eastern Pennsylvania district court contained no allegation whatever as to the character of the corporation against which it was directed. It alleged simply that the petitioners were creditors, and the debtor had committed acts of bankruptcy; "that the Elmira Steel Company, a corporation incorporated by and under the laws of the state of New York, has had, for the greater portion of six months next preceding the filing of this petition, its principal place of business in the Bullitt Building, on Fourth street, between Chestnut and Walnut streets, which said place is in the city and county of Philadelphia, state of Pennsylvania, and the Eastern district of Pennsylvania, and owes debts to the amount of $1,000"; and there is nothing whatever in the petition as to the character of the business of the corporation debtor. Failure to object was no more than what admission by default of pleading or express admission would be,—admission of the facts alleged in the petition. It admitted nothing not pleaded; and though the adjudication made upon considering the petition, as it recites, in effect, adjudged every alleged fact, it did not adjudge this corporation to be engaged in manufacturing, for that was not alleged in the petition. The conclusion is irresistible that this petition conferred no jurisdiction whatever upon the Eastern Pennsylvania district court, and that all proceedings therein, including the adjudication made upon that petition, and upon all subsequent proceedings which had been or may be had thereunder, including the appointment of receivers and the appointment of a trustee, if any, and his title, are absolutely void as against any person who, anywhere or at any time, may raise the objection.

This disposes of all questions which need to be discussed by this opinion. That discussion has extended to great length. But even now this opinion does not equal in length the voluminous briefs in typewriting and by print which have been spread before me; nor have I been able to comment upon all the interesting questions raised by the very able, ingenious, and learned arguments of counsel; though I have read them all with great interest, and studied every case cited with the desire to arrive at just conclusions. I have been led to the writing of a longer opinion than otherwise because the reference to me is to aid the court, and in the performance of my duty under it I have deemed that the court, which is to make the final decision, should be possessed of all which I have found important upon the very interesting questions which the matter has presented. While, as I have endeavored to show, those questions seem to depend for their solution upon general principles, the application of many of them to the present act seems to be presented for the first time by

this matter, which is another reason, or at least occasion, for this extended consideration of them. It follows that in my opinion, and upon the facts found in the accompanying report, an adjudication should be made adjudging the Elmira Steel Company bankrupt.

Judson A. Gibson and Edward G. Herendeen (Frederick Collin, of counsel), for Richard G. Crawford, William T. Jones, James Bray, and Daniel F. Nelan.

Herendeen & Mandeville, Charles Marvin, Reynolds, Stanchfield & Collin, Herbert N. Babcock, E. J. Baldwin, R. H. Thurston, S. R. Van Campen and F. C. Ogden, for divers other creditors.

August Becker, for Morrison & Risman.

William C. Carroll (John Dickey, Jr., and Hazard Dickson, of counsel), for William T. Rainey & Co. and George B. Newton & Co.

HAZEL, District Judge. I have given consideration to the questions presented on this motion to confirm the report of the special master, who finds that the Elmira Steel Company should be adjudged bankrupt. Briefs of counsel for judgment creditors opposed to the adjudication are ably prepared and arguments learnedly presented. I am of the opinion, however, that the special master has accurately stated the law and has properly applied the present bankruptcy act to the questions presented. When this proceeding was instituted by the filing of the creditors' petition, the Elmira Steel Company was insolvent. The facts deemed established by the learned master and the inferences deducible therefrom can lead to no other reasonable conclusion. No other or different conclusion ought to be reached on facts and circumstances such as exist in this case. The question of jurisdiction of this court and the effect upon this proceeding of the proceedings in the Eastern district of Pennsylvania are exhaustively and ably considered by the master. I can add nothing thereto. I concur in his opinion and finding that this court has jurisdiction of this proceeding, that the district court of the Eastern district of Pennsylvania acquired no jurisdiction whatever, and that all proceedings therein, including the adjudication upon the petition and those subsequent thereto, are void. The Elmira Steel Company is accordingly adjudged bankrupt, and the proper order of reference may be entered; costs and disbursements to be paid out of the estate.