In re CARLEY.

(District Court, D. Kentucky. February 23, 1901.)

BANKRUPTCY—EVIDENCE—SCOPE OF EXAMINATION OF WITNESS.

    The provisions of Bankr. Act 1898, § 21a, which authorize a court of bankruptcy by order to require any person who is a competent witness under the laws of the state to appear in court, or before a referee or judge of a state court, to be examined "concerning the acts, conduct or property of a bankrupt," should be liberally construed, so as to enforce full and frank answers by a witness in aid of the bankruptcy proceedings; but it does not authorize inquiry of a witness as to his private affairs which have no relation to the "acts, conduct or property" of the bankrupt, nor can a court require him to produce private papers which have no relation thereto; and a mere affidavit of belief on the part of creditors or others is not sufficient to overcome a positive statement of the witness that the transactions inquired about or papers demanded have no relation to the bankrupt, so as to authorize a court to compel him to answer or to produce such papers.

In Bankruptcy. On motion to require a witness being examined on commission to answer certain questions and produce certain papers.

    A. Gordon Murray, for creditors.
    Harris & Marshall and Dodd & Dodd, for respondent.

    EVANS, District Judge. Some months ago Francis D. Carley was adjudicated a bankrupt by the United States district court for the

district of New Jersey, and under section 21a of the bankrupt act certain of his creditors have obtained an order for the examination of William E. Chess in this district "concerning the acts, conduct or property of the bankrupt." A commission for that purpose was in process of execution before the Honorable Emmet Field, judge of the Jefferson circuit court, in this district; and the clerk of this court, pursuant to sections 868 and 869 of the Revised Statutes of the United States, had issued a subpœna requiring the attendance of the said Chess, and had, under the orders of the court, annexed thereto a requirement that he bring with him certain papers. During his examination under his attendance thus required, the witness refused to answer certain questions, and was ruled by an order of this court to show cause why he refused to answer the same or to give the information required in response thereto; the language of the rule in this connection being that he should show cause why he refused to answer certain questions, to wit:

"Q. Did you put in a single dollar into the firm then? And also: Q. As a matter of fact, you did not put in a single dollar then, did you? Also, in that you refuse to produce certain documents, to wit, a certain certificate for 990 shares of the capital stock of the Francis D. Carley & Co., a certain power of attorney alleged to have been given to the bankrupt, and a certain agreement between himself and M. G. C. Carley, the bankrupt's wife, all of which more fully appears by the affidavit annexed hereto."

To this rule the witness has filed a response showing cause, and the court is to consider whether the response is sufficient.

Speaking generally, I think the provisions of section 21a of the bankrupt act should be liberally construed, so as to enforce full and frank answers by witnesses who are being examined under its provisions as to the "acts, conduct or property of the bankrupt"; the object being to secure information on those subjects for use in the administration of the bankrupt's estate. The statute was intended for beneficial purposes, and, in order to effect them, witnesses should fully disclose all their knowledge relative either to the acts, the conduct, or the property of the bankrupt. But the act does not demand such liberality of construction when it is sought to inquire into the acts, conduct, or property of any person other than the bankrupt himself. Indeed, the act does not authorize, in this mode of proceeding, any examination whatever into matters other than those specifically mentioned, which might, however, include cases where the acts, conduct, or property of the witness are so connected or interwoven with those of the bankrupt as to make them virtually the same, by reason of community of interest. The court of bankruptcy itself would have no jurisdiction under this form of proceeding otherwise to inquire into the acts, conduct, or property of any other person except the bankrupt; and this court, which is merely acting in aid of the bankrupt court in which the proceeding is pending, can have no more jurisdiction than that court. Nor can the jurisdiction or power of this court be expanded or influenced by the suspicions or beliefs of any agent or attorney of the creditors of the bankrupt as to what the witness might prove, or what the facts might be in respect to outside matters. The inquiry addressed to the witness must relate to the

"acts, conduct or property of the bankrupt," as I have explained, in order to give this court any jurisdiction to compel answers to inquiries made' of him. The trustee or creditors have the right, under the statute, by this inquisitorial proceeding, to acquire information as to the bankrupt's affairs; but they have not, and should not have, any such right as to the affairs of outside persons.

With the expression of these general views, we come to consider whether this witness was required to answer the questions actually propounded to him. The first two are in these words: First, "Did you put in a single dollar into the firm then?" and the second, "As a matter of fact, you did not put in a single dollar then, did you?" It is entirely manifest from reading them that these two questions relate exclusively and altogether to acts, not of the bankrupt, but of the witness alone; and there is no reason why he should have answered either of them, unless he chose voluntarily to do so, and the court has no authority in this proceeding to compel him to answer either of those questions.

The third clause of the rule required the witness to show cause why he refused to produce a certain certificate for 990 shares of the capital stock of the Francis D. Carley Company. To this the respondent showed cause in these words:

"As to the certificate for 990 shares of capital stock of Francis D. Carley & Company, incorporated, respondent says that there is such a certificate, though the same is not now in the possession of respondent, and he says that the bankrupt, Francis D. Carley, owned no part of the capital stock of the corporation of Francis D. Carley & Company, and has no interest whatever in said certificate for 990 shares, which is respondent's private property; and creditors of the bankrupt have no right to the possession thereof, or to inspect the same."

Evidence upon this point may possibly refer to some act or conduct of the bankrupt, and, without knowing definitely what the issues are which are involved in the hearing before the court in which the bankruptcy proceedings are pending, I see no reason why the witness shall not make substantially the same statement in his deposition, and I think he should at least do that.

The fourth clause of the rule required the witness to show cause why he refused to produce certain powers of attorney alleged to have been given to the bankrupt. The witness, in his response, showed cause as to this in the following language:

"As to certain powers of attorney, or any powers of attorney, from respondent to the bankrupt, Francis D. Carley, referred to in the rule herein and in the affidavit as a basis therefor, respondent says he has not in his possession or under his control any power of attorney ever given by him to the bankrupt, nor has he any copy of any power of attorney, except one authorizing the bankrupt to vote his (respondent's) stock in the Francis D. Carley & Company corporation at a special meeting to be held in Jersey City, New Jersey, on September 1, 1900, for the purpose of electing officers."

Possibly the testimony sought upon this proposition may relate to the acts of the bankrupt, and I see no reason why at least the statements made in the response may not be made by the witness in his examination; nor do I see any reason why a copy of the power of attorney authorizing the bankrupt to vote witness' stock in the Francis

D. Carley Company at a special meeting to be held in Jersey City on September 1, 1900, for the purpose of electing officers, or a copy of that copy, may not be filed as a part of the deposition of the witness. As I have stated, this may relate to the acts or conduct of the bankrupt himself in some way, which, with the imperfect light before me, may have some bearing upon the issues in the bankruptcy proceedings in New Jersey.

The fifth clause of the rule required the witness to show cause why he refused to produce a certain agreement between himself and M. G. C. Carley, the bankrupt's wife. The witness, in his response, showed cause as to this in the following language:

"As to a certain or any agreement between respondent and M. G. C. Carley, the wife of Francis D. Carley, the bankrupt, respondent says that he has in his possession a copy of an agreement made between respondent and the said M. G. C. Carley, respondent's sister, which had relation to and contemplated the formation of the partnership of Carley, Stokes & Co.. hereinbefore referred to, and provided that respondent should be a special partner in the said firm, and contribute $30,000 thereto, to be furnished by the said M. G. C. Carley, and that in consideration thereof, and the limitation of the liability of respondent as a partner to said sum of $30,000, said agreement provided that the said M. G. C. Carley should have the profits of respondent as a special partner in the said firm of Carley. Stokes & Co.: but respondent further says that, as shown from the transcript of his testimony herein, said M. G. C. Carley never at any time contributed the said $30,000 provided for in said agreement, or any part thereof, and the said agreement did not become effective for any purpose, was wholly unexecuted, and the said M. G. C. Carley never acquired by said agreement any right to the assets of or interest in the firm of Carley, Stokes & Co. Respondent further says that the bankrupt, Francis D. Carley, was not referred to, or in the remotest degree to be a personal beneficiary under said agreement, and as said agreement was solely and exclusively between respondent and his sister, M. G. C. Carley, never executed, and exclusively a private matter of respondent with his sister, respondent declined to produce the said agreement in the course of his examination, and submits to this honorable court that it is a private affair. and, as the bankrupt had no interest therein, he should not be required to produce the same."

This response. upon its face, seems to me to show good cause why the witness refused to produce the agreement referred to, or to respond to any inquiries concerning it. The bankrupt had no interest in this agreement, and was not a party to it. Indeed, assuming what is said to be true, the wife had no interest in it. At most, it was a proffer of the witness to do something beneficial for his sister, who happened to be the bankrupt's wife; but the proffer was made upon terms with which it appears she did not comply, and therefore did not entitle herself to any interest in the limited partnership of Carley, Stokes & Co. Certainly nothing that was done brought this matter within section 21a of the bankrupt act, concerning examinations as to the acts, conduct, or property of the bankrupt. I take it that the creditors of a bankrupt who seek information from witnesses through the processes authorized by section 21 of the bankrupt act cannot, without more than a mere affidavit as to belief, demand anything further by that method of proceeding after the witness has positively negatived the idea that the matter inquired into has any relation to the acts, conduct, or property of the bankrupt. Of course, the statements of a witness, or his refusal to make statements, in no wise pre-

106 F.—55

vents the trustee in bankruptcy from instituting plenary proceedings in a court of proper jurisdiction to enforce any claim or demand that the bankrupt may have had against any person or property. For the reasons indicated, the court would not feel authorized by the statute to punish the witness for refusing to produce the agreement between him and his sister; nor would it feel authorized, in the face of his response, to require the production of that paper, because it does not appear that the bankrupt had any interest in it. The witness will be given until the close of the 25th inst. to testify as herein indicated under clauses 3 and 4 of the rule issued against him, and if by that time this is done the rule will be discharged, but without costs either way.