In re HASSENBUSCH.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1901.)

No. 954.

BANKRUPTCY—POWERS OF COURT—WARRANT FOR ARREST OF BANKRUPT.

Bankr. Act 1898, § 9, subd. "b," providing that the judge may, before the expiration of one month after the qualification of the trustee, upon satisfactory proof that the bankrupt "is about to leave the district in which he resides or has his principal place of business to avoid examination, and that his departure will defeat the proceedings in bankruptcy, issue a warrant to the marshal directing him to bring such bankrupt forthwith before the court for examination," confers no authority upon a court of bankruptcy to issue a warrant for the arrest of a bankrupt who is not within the district, but who removed from it six months previously and before the proceedings in bankruptcy were instituted, such warrant being applied for to serve as the basis for extradition proceedings in another district; nor has the court such authority under the general powers conferred upon it by section 2, cl. 15, "to make such orders and issue such process * * * in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act."

Petition for Revision of Proceedings of the District Court of the United States for the Western Division of the Western District of Tennessee, in Bankruptcy.

The question now presented for decision arises upon an original petition filed in this court February 21, 1901, by the trustee in bankruptcy appointed in the court below, pursuant to section 24, subd. "b," in which it is provided: "The several circuit courts of appeal shall have jurisdiction in equity, either interlocutory or final, to superintend and revise in matter of law the proceedings of the several inferior courts of bankruptcy within their jurisdiction. Such power shall be exercised on due notice and petition by any party aggrieved." The bankrupt left Memphis, Tenn., August 1, 1900. He had up to that time been engaged in business in the city of Memphis, trading as the Enterprise Furniture & Carpet Company. He removed from Memphis to the city of Cincinnati, Ohio. On the 11th of October following, the original petition was filed in the court below, and involuntary proceedings in bankruptcy thereby instituted. The case was proceeded with until a receiver and trustee had been appointed, and the property of the bankrupt seized in the usual way. Subpœna regularly issued for the defendant was returned not executed, the return showing that the defendant could not be found within the district. This was followed by publication for the defendant, and the defendant, failing to appear, was subsequently adjudged a bankrupt. In the progress of the case it became desirable to secure an examination of the bankrupt, and for this purpose application was made to the district judge, February 8, 1901, in open court, for a warrant for the arrest of the defendant. It appeared that he was at that time in the Western district of Missouri, and the purpose of the motion was to obtain a warrant for his arrest, and make this the basis for extradition proceedings in the Western district of Missouri. The application was made under section 9, subd. "b," of the bankruptcy act of 1898, which, given in full, is as follows: "The judge may, at any time after the filing of a petition by or against a person, and before the expiration of one month after the qualification of the trustee, upon satisfactory proof by the affidavits of at least two persons that such bankrupt is about to leave the

district in which he resides or has his principal place of business to avoid examination, and that his departure will defeat the proceedings in bankruptcy, issue a warrant to the marshal, directing him to bring such bankrupt forthwith before the court for examination. If upon hearing the evidence of the parties it shall appear to the court or a judge thereof that the allegations are true and that it is necessary, he shall order such marshal to keep such bankrupt in custody not exceeding ten days, but not imprison him, until he shall be examined and released or give bail conditioned for his appearance for examination, from time to time, not exceeding in all ten days, as required by the court, and for his obedience to all lawful orders made in reference thereto." The district judge denied the application for the warrant of arrest, and his action in this respect is assigned for error, and presents the only question in respect of which we are now asked to revise the proceedings in the court below. Section 10 of the bankruptcy act is cited as affecting the proper construction of subdivision "b," and as supporting the contention of the trustee as to the proper interpretation of that clause of section 9. Section 10 is as follows: "Whenever a warrant for the apprehension of a bankrupt shall have been issued, and he shall have been found within the jurisdiction of a court other than the one issuing the warrant, he may be extradited in the same manner in which persons under indictment are now extradited from the district, within which a district court has jurisdiction to another." In section 2 of the same act the jurisdiction and power of the district courts in matters of bankruptcy is declared, and among other powers defined are the powers to "(13) enforce obedience by bankrupts, officers, and other persons to all lawful orders, by fine or imprisonment, or fine and imprisonment; (14) extradite bankrupts from their respective districts to other districts; (15) make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act."

C. L. Marsilliott, for petitioner.

Before LURTON and SEVERENS, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after making the foregoing statement, delivered the opinion of the court.

It would seem that there ought to be no doubt or difficulty in regard to the meaning or interpretation of section 9, cl. "b," when the entire subdivision and the subject to which it relates are considered. Indeed, the language of the provision throughout seems quite plain and free from difficulty, in view of the settled rule of construction applicable to a statutory power like that here conferred. The provisions of subdivision "b," in which only the power to issue the warrant of arrest is found, are very plain and specific, and are not involved in any doubt by reference to the other provisions of the same enactment which are supposed to affect the meaning of subdivision "b," and enlarge by implication the power therein defined. Section 10 clearly does not deal with or concern the jurisdiction or power of the court in which the bankruptcy case is pending to issue a warrant for the apprehension of the bankrupt, but only confers power on a court other than the one issuing the warrant to extradite the bankrupt, just as a person under indictment in one district may be extradited from another district in which he is found, under the provisions of the existing statute upon the subject. In reference to section 10 the learned district judge said:

"But the trouble here is that, broad as this section is in its language, it cannot be made to cover any case except one in which a lawful warrant may be

issued for the apprehension of a bankrupt, and that only can be done under the limited provisions of the preceding section 9."

And, discussing the restrictions in clause "b," the district judge said:

"The next limitation is 'that such bankrupt is about to leave the district in which he resides or has his principal place of business to avoid examination.' Now, this bankrupt is not 'about to leave this district.' He has long since left it. If it was his residence at the time the original petition in bankruptcy was filed, it does not appear to be so now, at the time this application is made. If it was his principal place of business 'at the time of the original petition in bankruptcy was filed, it does not appear to be so now. Referring to the question of section 2 (1), if it was his domicile at the time the original petition was filed, it does not appear to be so now. If it were either of these at the time the original petition in bankruptcy was filed, or if it had been either of these for the greater portion of six months next before the filing of that petition, this court had the power to adjudicate him a bankrupt; nor did that power to do this at all depend upon his personal presence within the district. In either category, if personally found within the district, the bankruptcy court, after adjudication, or, it may be, before, had the power to summon him for inquisitorial examination; but, in order to exercise this power, he must be personally served with process for the purpose. He need not be personally served with process for the purpose of adjudication, since special provision is made for bringing him in by publication for that purpose. But no provision is made for bringing him in by publication for inquisitorial examination; nor is any provision made for sending for him for that purpose, if he be without the district. Indeed, no provision is made for sending for him to bring him into the court for the purpose of adjudication if he be without the district. That must be done by publication. It is stretching the provisions of this section of the statute beyond all bounds of narrow or reasonable construction of its character to say that it will cover the issuance of a warrant to apprehend a bankrupt when he was not within the district, and is not about to leave it, but where he has been absent from it, as shown by the facts, for quite six months before the application is made. * * * It was held under the act of 1867 that the power of issuing a provisional warrant for the seizing of person or property was one of great delicacy, not to be called into action unless the court was satisfied that it was necessary for the protection of the estate. Extradition from one district to another is of far greater delicacy, as I have already indicated. Bump, Bankr. (9th Ed.) 444, 446. It was also held under that act that arrest was in no sense a security for the creditors' debts, and had no other purpose than the attendance from time to time as the court should order. In re Sheehan, 8 N. B. R. 345, Fed. Cas. No. 12,737; M. & M. Nat. Bank v. Brady's Bend Iron Co., 5 N. B. R. 491, Fed. Cas. No. 9,018. In the case of Usher v. Pease, 116 Mass. 440, Mr. Chief Justice Gray (now Mr. Justice Gray, of the supreme court of the United States) held that the analogous provision of the act of 1867 should be strictly confined to the language of the act; that under that act the bankrupt, when arrested, could only be detained 'until the decision of the court upon the petition or the further order of the court'; and that the power of the court in that behalf could not be enlarged by turning 'and' into 'or' in the order for the warrant, whereby the court might detain him for other purposes after the adjudication."

In Coll. Bankr. (3d Ed.) p. 116, the author, commenting on section 9, cl. "b," says:

"The bankrupt's sole purpose in leaving the district must be to avoid examination. In presenting its report on the bankruptcy bill to the 55th congress, on December 16, 1897, the judiciary committee of the house said, with reference to this section (then section 8), which had been amended in committee so that this provision with reference to the motives of the bankrupt in leaving the district read exactly as it here appears: 'In the section where provisions are made for taking into custody the bankrupt when he is about to leave the district, and where his departure would tend to delay the proceed-

ings in bankruptcy, an amendment has been made, limiting the departure to cases in which the bankrupt was leaving for the sole purpose of avoiding the examination. If he left for other purposes,—such as to better his condition,—the provisions of the law will not apply to him.' Every particular fact required in order to give one a right to move for the arrest of the bankrupt must be clearly shown to exist. The language of the section implies that, before the court can issue a warrant, it must not only find it to be true that the bankrupt leaves to avoid examination, but that it is necessary that he be detained, that it is necessary that he be examined, and that in no other way than by detention by the marshal can his presence be secured."

It is quite evident that the jurisdiction "to extradite bankrupts from their respective districts to other districts," as declared in the fourteenth specification of jurisdiction in section 2, is exactly the same power, stated in more general terms, as that found in section 10 of the same act, wherein the power is more specifically defined and limited, and can in no just view be held to enlarge by implication the power in the court of another jurisdiction to issue the warrant of arrest provided for in clause "b," § 9. Nor is there any foundation in authority or reason for the suggestion that the power to "make such orders, issue such process and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act," gives to subdivision "b" of section 9 any larger meaning than its terms naturally and fairly import or convey. No discussion could make this plainer than a simple reference to the terms of the two provisions of the statute, from which it is obvious that there is no substantial ground for the proposition that the broader powers conferred on the district court in the fifteenth subdivision of jurisdiction do not extend or enlarge a jurisdiction separately dealt with and specifically and carefully defined and limited, like the power contained in clause "b" of section 9. In this case the bankrupt had departed from the district and from the state of Tennessee more than two months before the petition in bankruptcy was filed, and six months before the application for the warrant of arrest was made; and under these circumstances the issuance of a warrant of arrest would have been clearly the exercise of a power not warranted by the statute in terms or by any fair implication, giving to it even a liberal construction. Perhaps the closest analogy to the warrant for arrest authorized by clause "b" of section 9 is found in the long-used and familiar writ of ne exeat in the English system of equity practice. That writ was only authorized and used against one who, "designing to avoid the justice and equity of the court, is about to go beyond sea, so that the duty will be endangered if he goes." The writ was only issued against one at the time within the jurisdiction of the court and subject to the personal execution of its process, and for the distinct purpose of retaining him within the jurisdiction, and to prevent his going beyond sea. The writ was, of course, never used or attempted to be used for the purpose of procuring the return of one who had already gone beyond sea, or as the basis of extradition or rendition proceedings. And if, as was held by Judge Brown in Re Lipke (D. C.) 98 Fed. 970, the court, in the exercise of its equity jurisdiction in a bankruptcy proceeding, may issue this writ under the power with which the district court is invested by subdivision 15 of section 2, the decision is no authority for the proposition that the

court may issue a warrant of arrest under the circumstances and for the purposes disclosed in this record, and furnishes no support to the contention of the trustee. Judgment affirmed.