## In re WILLIAMS.

### (District Court, W. D. Tennessee. May 20, 1903.)

1. BANKRUPTCY—JURISDICTION OF COURTS—ANCILLARY PROCEEDINGS IN OTHER DISTRICTS.

Bankr. Act July 1, 1898, 30 Stat. 544, c. 541 [U. S. Comp. St. 1901, p. 3418], confers no statutory ancillary jurisdiction on Circuit or District Courts to aid in the administration of a bankrupt estate in another district, but a trustee who is vested by the act with all the title and rights of the bankrupt, as well as certain rights of creditors, seeking to recover property or enforce rights in another district, stands in the same position as those to whose rights he succeeds, and must resort to the same courts, state or federal, and is confined to the same remedies.

2. SAME.

A District Court has no special ancillary power under the bankruptcy statute to make an order on the application of the trustee of a bankrupt whose estate is being administered in another district, requiring persons residing within the district to appear before a referee for examination concerning the acts, conduct, and property of the bankrupt.

3. SAME—POWER TO ORDER EXAMINATION OF PERSONS IN OTHER DISTRICTS.

It would seem that a court having charge of the administration of a bankrupt's estate has power, under Bankr. Act July 1, 1898, § 21b, 30 Stat. 552, c. 541 [U. S. Comp. St. 1901, p. 3430], to order that any person having knowledge "concerning the acts, conduct, or property of the bankrupt," but who resides without the district or state, and more than 100 miles from the court, shall be examined before a commissioner in accordance with the provisions of the general statutes or practice in equity cases, and that persons so ordered to be examined may be compelled by proper process, as in other cases, to appear and testify.

In Bankruptcy. On application for an order for the examination of certain witnesses before a referee.

H. W. Currey, for trustee.

HAMMOND, J. The adjudication in this case took place in the district of Colorado, where the proceedings in bankruptcy are pending. Application is now made to this court by Wilbur F. Denius, the trustee in bankruptcy, for an order and a subpœna for an examination before a referee of Ralph Davis, Mike Haggerty, and the cashier and other officers of the Security Bank of this city, "concerning the acts, conduct, and property of the bankrupt," of which it is alleged that the said parties have knowledge. This application is supported by an order of the court of bankruptcy in Colorado, directing the trustee to apply to this court for such ancillary proceedings and relief as will enable him to discover and secure the property of the bankrupt found within this Western District of Tennessee; also it is offered to exhibit an affidavit that the trustee is informed and believes that the bankrupt deposited a large sum of money, not less than $12,500, and it may be more, with Davis and Haggerty for the purpose of concealing the same, and hindering and delaying his creditors, which sum of money, or a part of it, was deposited in the Security Bank,

¶ 1. Supplemental and ancillary proceedings and relief in federal courts, see note to Toledo, St. L. & K. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

123 F.—21

and either remains in that bank or has been paid out by the parties aforesaid.

Heretofore, and some days ago, an application was made to the Circuit Court of the United States in this district by "a petition" or bill in equity by the trustee against these same parties, in which, in a general way, and without any specifications of facts, the same allegations were made as to the deposit of the money, and that court was asked for an injunction to restrain them from paying over the money to the bankrupt, and for such general relief as the trustee might be entitled to in a court of equity. Because of certain defects and imperfections in the bill not necessary to mention, because of the fact that its statements were too general and indefinite, and also because it did not appear that that bill was filed in aid of any action at law or other proceeding by the trustee to recover the money, but was only an invocation of what was called in the bill the ancillary jurisdiction of that court in aid of the bankruptcy proceedings in Colorado, the application for injunction was refused; whereupon the bill was withdrawn, and the pending application was made to this court.

There seems to be prevailing some misapprehension on the subject of ancillary jurisdiction in bankruptcy, several similar applications having been made of late on the supposed theory that every District Court of the United States possesses the power under the bankruptcy statute to aid bankruptcy proceedings in every other District Court engaged in the administration of bankruptcy assets. In one case we were asked to take summary possession of certain race horses found within this district alleged to belong to a bankrupt in one of the District Courts of Missouri, and to enforce their immediate delivery to the trustee in bankruptcy for removal to Missouri, which application also was refused, as this must be.

The elastic or expansive quality of the word "ancillary" is misleading possibly in relation to this subject, and care must be had not to misapply the practice of proceedings known in the general law as ancillary to the practice under the bankruptcy statute. If one have an action at law pending, he may file a bill of discovery in equity or a bill for some other equitable relief in aid of his action at law, and this bill is auxiliary to his action at law, and in a certain sense ancillary. So, if one have a judgment at law, and his execution thereof be obstructed or hindered, he may file a bill in equity to remove the obstruction, or to subject assets which the execution otherwise will not reach, and this and similar proceedings are auxiliary, and in a certain sense ancillary; and, in the peculiar relation of the jurisdiction of the federal courts to the citizenship of parties, this principle of ancillary jurisdiction is sometimes resorted to for sustaining supplemental litigation involving a jurisdiction which otherwise a federal court could not maintain; as, where the judgment at law is between a plaintiff and defendant of adverse citizenship, but the subsequent bill in equity involves a controversy between citizens of the same state, of whom the federal courts could have no jurisdiction, the proceeding is treated as a continuation of the suit at law and ancillary to it. Such a proceeding is treated as founded on the adverse citizenship of the original parties, this being an enlargement of the doctrine of ancillary jurisdic-

tion to meet the exigencies of that case. Again, where there is a foreclosure of a railroad mortgage covering a line of road running through many states, if not as a matter of right, certainly as a matter of comity, the plaintiff may apply to the federal courts in another state to entertain an identical bill for foreclosure, to appoint the same receiver, and to enter identically the same orders of administration in foreclosure proceedings as are taken in the court of original cognizance. This also is an enlargement of the practice of ancillary or auxiliary jurisdiction to meet the exigencies of the case, and the enlargement of a jurisdiction which courts of equity have in modern times assumed in such cases. Also, cases may be found, like the administration of the "insolvent" assets of a building and loan association, where resort has been had to such auxiliary proceedings as are common in railroad foreclosures; but this last assumption of jurisdiction is regarded as more doubtful, and when we come to consider the dominant power that every state has over the insolvent assets situated within the boundaries of that state to administer the same, independently and according to its own laws of insolvency, such a jurisdiction is exceedingly questionable.

It is not necessary to go into the technicalities of any of these examples of ancillary or auxiliary jurisdiction, because the existing bankruptcy statute is absolutely destitute of any hint of such a jurisdiction in aid of proceedings in bankruptcy pending in another district or court of bankruptcy. Possibly, Congress might have adopted such a scheme of bankruptcy, and might have made every District Court in the United States a kind of administrator ad colligendum of the assets within that district in aid of the original court of bankruptcy charged with the administration of the bankrupt's property; but Congress has done no such thing, and therefore the District Courts in the several states have no such ancillary or auxiliary jurisdiction as has been invoked by these applications. The scheme of the bankruptcy statute is that the trustee is equipped with the fullest possible title to all property of the bankrupt, to all his rights, remedies, and causes of action, and certain specific causes of action have been created for him or given by the statute, as where he may bring suits that the creditors only could have brought without the statute. Besides he is armed with all the legal rights and remedies that the bankrupt had or that any other owner might have to enforce his title and his rights of action, and these he is required to use for the collection of the property and assets of the bankrupt under the guidance of the court which appoints him. He may bring his action of replevin for his race horses or other property; or his action at law for the recovery of money; or his bills in equity for the enforcement of trusts or other equitable remedies; or his libels in admiralty, where that jurisdiction applies; and he must resort to the courts of the states, or to the federal courts in other states, according to his right to enter each or either of them, for enforcing whatever remedies he may have as owner of the bankrupt's estate, and to bring whatever causes of action may be necessary; and this is all he can do in the collection of the bankrupt's property for the payment of his debts. Simply because he is trustee in bankruptcy, or simply because

he is engaged in the administration of a bankrupt's estate in one district, he is not authorized to go to another district, or to a bankruptcy court in another district, and ask for ancillary or auxiliary aid of any kind which is not comprehended within the same legal and equitable remedies belonging to other owners, as above set forth. Judge Trieber of the District Court of Arkansas has taken this view of the subject in a case involving this very bankruptcy, and with that judgment I fully concur. Re Williams (D. C.) 120 Fed. 38. Hence the application that has been made for an order to be entered here for the examination of the parties above mentioned and the accompanying subpœna to enforce the same must be refused.

The order that is desired for an examination of the parties, as above mentioned, should, in my judgment, be made by the court of bankruptcy in Colorado having charge of the administration of this bankruptcy estate. In the case of Hassenbusch, not reported, but affirmed in Re Hassenbusch, 108 Fed. 35, 47 C. C. A. 177, this court, in refusing an order for the extradition of the bankrupt from a district in Missouri to this district for the purpose of an examination, under sections 9, 10, and 21 of the bankruptcy statute (Act July 1, 1898, 30 Stat. 549, 552, c. 541 [U. S. Comp. St. 1901, pp. 3425, 3430]) had occasion to suggest that although in the imperfect legislation of the existing statute no specific provision has been made for the examination of absent bankrupts or witnesses similar to that contained in section 26 of the act of March 2, 1867, 14 Stat. 529, c. 176, Rev. St. §§ 5086–5089, yet such an examination could be had under section 21 of the existing act; and I believe an order for the examination of Hassenbusch in Missouri was subsequently made by this court, but of that I am not quite assured. Commenting on the provision of Rev. St. §§ 5086–5089, this court said in that opinion:

"Although I find no identical or similar provision for the examination of an absent bankrupt in the act of 1898, unless as before suggested it may be comprehended in section 21 (b) of that act, yet it is not impossible that under the broad provision of section 2 (15) the bankruptcy courts may now adopt the same mode and exercise the same power as that specifically defined in Rev. St. § 5089, of the act of 1867. Such a power and such an order would be far more consonant with the letter and spirit of section 2 (15) of the act of 1898 (Bankr. Act July 1, 1898, 30 Stat. 545, 546, c. 541 [U. S. Comp. St. 1901, p. 3420]), than the assumption of any power under section 9 (b) and 10 of removing a bankrupt from another district for examination before the court or referee, when he had not become amenable to such a process by departing from the district after a warrant for his detention had been issued in accordance with the provisions of section 9 (b)."

I have no doubt that the same power exists, under section 21b of the act of 1898, in a court having charge of the administration of a bankrupt's assets, to order that any other person having knowledge "concerning the acts, conduct or property of a bankrupt," but who resides beyond the district or state and more than 100 miles from the court, shall be examined before a commissioner appointed for the purpose, concerning that knowledge, and that parties so ordered to be examined may be compelled by the proper process, as in other cases, to testify fully in regard thereto. I have no doubt, indeed, that if section 21 were not in the statutes of 1898 the court in Colorado would have this power under the general law. It was decided under the act of

1867, in Re Dunn, 9 Nat. Bankr. R. 487, s. c. sub nom. In re Wild, 12 Blatchf. 42, Fed. Cas. No. 4,173, that the provisions of that act for the taking of testimony of absent witnesses were so specific that the authority to take their testimony under the general law was excluded, and that such an examination must be had under the act of 1867, and not otherwise. If that be sound in judgment, then the want of such specific directions under the act of 1898 restores the general law. And that general law is one applicable to all courts, those of bankruptcy as others, for procuring the testimony of witnesses residing out of the jurisdiction or more than one hundred miles from the place where the court is held.

Depositions de bene esse may be taken according to Rev. St. § 863 [U. S. Comp. St. 1901, p. 661], or a dedimus potestatem may be issued under Rev. St. § 866 [U. S. Comp. St. 1901, p. 663], and subpœnas may run to any district within a hundred miles. Rev. St. § 876 [U. S. Comp. St. 1901, p. 667]. Ample provision is made by the Rev. St. § 868 [U. S. Comp. St. 1901, p. 664], for the issuance of a subpœna by the clerk of any court of the United States where the witness resides to take the testimony of such absent witnesses before a commissioner appointed by the court where the proceedings are pending, and a neglect or refusal to attend or testify can be enforced by the judge of the court which issues the subpœna; also subpœna duces tecum may be had and enforced in such an examination (Rev. St. §§ 868–869 [U. S. Comp. St. 1901, pp. 664, 665]). There are special provisions applicable to courts of equity in Rev. St. §§ 862, 917 [U. S. Comp. St. 1901, pp. 661, 684], and Equity Rules 67, 71, which definitely and particularly regulate the practice of taking testimony in equity cases. 1 Bates' Fed. Eq. Pr. §§ 390–423.

Under the bankruptcy act of 1867, Rev. St. §§ 5003–5006, and Rev. St. §§ 5086–5089, somewhat more specific provision was made for the examination of absent bankrupts and witnesses than is found in the act of 1898, under section 21 and other sections pertinent thereto. But under section 30 of the act of 1898 (Bankr. Act July 1, 1898, 30 Stat. 554, c. 541 [U. S. Comp. St. 1901, p. 3434]), the Supreme Court has the same power to make all necessary orders and rules upon the subject as that court has to make such orders and rules in equity cases. By General Order 37 in Bankruptcy, 89 Fed. xiv, 32 C. C. A. xxxvi, it has been provided that the equity practice shall be followed in all cases not otherwise provided for; and General Order 22, 89 Fed. x, 32 C. C. A. xxv, has somewhat regulated the practice of taking testimony in cases pending before a referee; but the Supreme Court does not seem to have especially regulated the practice of taking the testimony or an inquisitorial examination of absent bankrupts and witnesses. But evidently the ordinary equity practice is the proper method of taking such testimony, and under that practice it is as competent for the court of bankruptcy having charge of the administration of the bankrupt's estate as other courts to direct that absent witnesses shall be examined by a commissioner especially appointed for the purpose, proceeding under the general equity rules in that behalf, and enforcing the order in accordance with the provision of section 868, Rev. St. Such was the course pursued in Re Carley (D. C.) 106 Fed. 862, and there is

scarcely any question that that is the proper practice. The special provisions of the act of 1867 on this subject, already referred to, were almost identical with the equity rules in this method of practice, and when that statute made no specific provision the general law in other cases for taking such testimony was followed. Re Woodward, 8 Ben. 112, Fed. Cas. No. 18,000. It would seem that the general law was applied under the act of 1898 in Re Hemstreet (D. C.) 117 Fed. 568. A similar provision for the examination of witnesses "out of England" is found in section 27 of the English act of 1890, Williams, Bk. 87; and, manifestly, it is an essential feature of every bankruptcy statute to make provision for the examination of bankrupts and witnesses when they are beyond the jurisdiction, but this is done under the direction of the court having charge of the bankruptcy proceedings, and not by any ancillary or auxiliary proceedings in other courts, in the legal acceptation or meaning of those terms.

It is proper to remark here that the ordinary provisions of law for taking the testimony of absent witnesses contemplate their examination as witnesses to prove definite issues made by the pleadings in the case in which they are examined as witnesses. But in bankruptcy proceedings, while the scope of their examination is much broader, the purpose is none the less definite, although peculiar to bankruptcy proceedings. While they are witnesses in every sense of the word, they are examined inquisitorially for the purpose of discovering what general or specific knowledge they have of the bankrupt's affairs and property; or, to use the language of section 21 of the act of 1898, they are examined at large "concerning the acts, conduct, or property of a bankrupt." There may be no action at law or bill in equity or libel in admiralty or other like proceeding in which they are examined as witnesses upon issues made by pleadings in the ordinary way; but there is pending, in the bankruptcy court upon pleadings appropriate to that purpose, the administration of a bankrupt estate about which the trustee needs information from those who have knowledge of the bankrupt's affairs, and every bankruptcy system provides for an inquisitorial examination of all those wherever present who have such knowledge. It is this kind of examination which is provided for by the bankruptcy statute and procured by the ordinary practice for the taking of the testimony of witnesses when they reside beyond the jurisdiction of the court. Re Howard (D. C.) 95 Fed. 415; Re Fixen (D. C.) 96 Fed. 748; Re Foerst (D. C.) 93 Fed. 190.

The trustee should apply to his own court in Colorado for a proper order directing the examination of the witnesses residing in this district; it is not competent for this court, according to its practice, to make such an order.

Application refused.