## In re TYBO MINING & REDUCTION CO.

(District Court, D. Nevada. September 6, 1904.)

No. 35.

**1. BANKRUPTCY—JURISDICTION OF COURTS—ANCILLARY PROCEEDINGS.**

Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], confers no ancillary jurisdiction on a District Court as a court of bankruptcy to aid in the administration of the estate of a person adjudicated a bankrupt in another district, and such court is without power to appoint an ancillary trustee.

**2. SAME—PROCEEDINGS IN DIFFERENT DISTRICTS.**

Where petitions in bankruptcy are filed against a debtor in the courts of two districts, each of which has jurisdiction, the one in which the pro-

ceedings were last instituted will yield jurisdiction to the other, but will not necessarily dismiss the proceedings therein, since the court having priority of jurisdiction may order the case transferred under Bankr. Act July 1, 1898, c. 541, subc. 4, § 32, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3434], if it appears to be for the greatest convenience of the parties in interest.

In Bankruptcy. Petition for appointment and recognition of John Lawton Butler as trustee.

On May 2, 1904, the Eureka County Bank, Fletcher Bros., and P. H. Hjul, creditors of the Tybo Mining & Reduction Company, a corporation, filed a petition in this court praying that said corporation be adjudged a bankrupt. In this petition they state "that they are informed and believe, and upon such information and belief allege the fact to be, that heretofore, during the month of April, 1904, certain creditors of said bankrupt corporation residing in the state of Massachusetts petitioned the District Court of the United States for the District of Maine that said corporation be declared a bankrupt, and that said action was taken by and on behalf of certain officers of said corporation having claims against the same." To this petition the corporation interposed a demurrer upon the ground "that said petition fails to state facts sufficient to constitute any cause of action against said bankrupt, or to adjudicate said Tybo Mining & Reduction Company a bankrupt by the above-entitled court, for the reason that upon the face of said petition it appears that said Tybo Mining & Reduction Company is a corporation duly organized and existing under and by virtue of the laws of the state of Maine, and said petition further shows that prior to the filing of the same in the above-entitled court certain creditors of said bankrupt corporation petitioned the District Court of the United States for the District of Maine that said corporation be declared a bankrupt, giving said District Court last named original jurisdiction in the said matter." On July 19, 1904, John Lawton Butler, petitioner herein, presented to this court certain certified copies of the proceedings of the United States court for the District of Maine in the matter of the Tybo Mining & Reduction Company, showing that certain creditors of the corporation in Boston, Mass., had petitioned the United States District Court of Maine on April 8, 1904, to have said corporation adjudged a bankrupt; that thereafter the court, on April 23, 1904, adjudged said corporation a bankrupt; and that on May 14, 1904, petitioner was appointed by the court in Maine trustee of the estate of said bankrupt. He further represents: "That a large part of the property belonging to said estate, consisting of mining claims and personal property appertaining thereto situated in Tybo, Nye county, Nevada, amounting to several thousand dollars, is held under process of the state courts of Nevada in suits of Ernest Schendel and Sophie E. Williams against said Tybo Mining & Reduction Company, which holding the petitioner believes to be illegal and without right as against him as trustee of said estate. The petitioner further represents that since the said Tybo Mining & Reduction Company was adjudicated bankrupt in this case proceedings have been begun by certain creditors representing an indebtedness of less than $3,500 in the District Court of the United States for the District of Nevada, seeking to have a second adjudication of bankruptcy entered against said bankrupt, and to have its estate in Nevada administered by said District Court; that such double proceedings threaten to cause great confusion and delay, and to increase greatly the cost of the administration of the estate, and to cause great inconvenience to the majority of the creditors both in number and amount. Wherefore he prays that he may be authorized as trustee to proceed in equity or at law, and in such courts as he deems best, to recover possession or obtain the value of the property so held in Nevada, and that he may be authorized to intervene in the proceedings now pending in the District Court of the United States for the District of Nevada as aforesaid, to obtain the dismissal of said proceedings, and to procure ancillary appointment as trustee from said District Court of the United States for the District of Nevada, and to take such other steps and proceedings as may be necessary or desirable to protect and preserve the property of said estate outside the district of Maine, and to secure the just and economical administration thereof."

Alfred Chartz, for petitioner.

Cheney, Massey & Smith, for Eureka County Bank and other creditors.

HAWLEY, District Judge (orally). The petition of Butler virtually supersedes the point raised by the demurrer, and presents other questions to be determined herein. It is provided in the bankruptcy act of 1898 that the word "persons" shall include corporations, except when otherwise specified. Act July 1, 1898, c. 541, subc. 1, § 1 (19), 30 Stat. 545 [U. S. Comp. St. 1901, p. 3419]. Section 2 [U. S. Comp. St. 1901, p. 3420], in defining the jurisdiction of the bankruptcy courts, and defining their duties, provides, among other things, that they shall have power and authority to "(1) adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months, or the greater portion thereof, or who do not have their principal place of business, reside, or have their domicile within the United States, but have property within their jurisdictions, or who have been adjudged bankrupts by courts of competent jurisdiction without the United States and have property within their jurisdictions." As was said by Purnell, J., in Dressel v. North State Lumber Co. (D. C.) 107 Fed. 255, 256:

"This section is more explicit and comprehensive than like provisions in former bankruptcy laws. The jurisdiction is not dependent alone on residence, principal place of business, or domicile, but upon either or all three. A proceeding in bankruptcy partakes both of a proceeding in rem against the estate and a proceeding in personam against the bankrupt. The court of bankruptcy acquires jurisdiction of the former upon the filing of a petition in an involuntary proceeding, but of a bankrupt not until the adjudication."

See, also, In re Magid-Hope Silk M. Co. (D. C.) 110 Fed. 352.

If no proceeding in bankruptcy had been instituted in Maine against the corporation prior to the time of the filing of the petition of creditors in this court, its jurisdiction, under the provisions of this statute, could not be questioned, because this petition states "that the Tybo Mining & Reduction Company is a corporation organized and existing under and by virtue of the laws of the state of Maine, and has for the greater portion of six months next preceding the date of filing this petition had its principal place of business at Tybo, in the county of Nye and state and district aforesaid." This is one of the grounds giving jurisdiction to the courts. But it affirmatively appears that prior to the time of filing the petition in this state the District Court of Maine had acquired jurisdiction under the provisions of the bankruptcy act. The petition in that case averred "that the Tybo Mining & Reduction Company, a corporation duly organized under the laws of the state of Maine, has for the greater portion of six months next preceding the date of the filing of this petition had a principal place of business and had its domicile at Portland, in the county of Cumberland and state and district aforesaid." And these are the grounds giving that court jurisdiction under the provisions of the statute.

It goes, without discussion, that both courts ought not to proceed with independent hearings. That such a proceeding would be detrimental to all the parties concerned is too plain for argument. I am

of opinion that it is the duty of this court to recognize the priority of the jurisdiction of the District Court of Maine, and to "keep its hands off" from any interference therewith. In Re Elmira Steel Co. (D. C.) 109 Fed. 456, 474, 480, 5 Am. Bankr. Rep. 484, 517, 528, it was held that, as between two bankruptcy courts, the one in which the petition is first filed ought to be accorded exclusive jurisdiction over the case.

Should the proceedings in this court be dismissed? Is Butler entitled to the order he prays for? These questions call for a further discussion of certain points argued by the respective counsel herein. If the proceedings in this state be dismissed, would this court have any jurisdiction or authority to grant the prayer of Butler's petition? If so, from whence could the authority be derived? This question is one of far-reaching importance. The comity existing between courts of different states, and the general power of courts of equity and of law in auxiliary and ancillary proceedings, would seem, at first blush, to imply that this court should at all times be ready and willing to aid the courts of a sister state in enforcing remedies and rights in suits or proceedings over which they have jurisdiction concerning property that may be situate in this state. And, if such remedies could only be enforced by the aid of this court, I should hesitate long before refusing such assistance as the necessities of the case might demand, if I had the power so to do. Has this court, as a court of bankruptcy, the power to grant the authority asked for by petitioner? Can this court exercise any ancillary jurisdiction by virtue of the general authority of courts in equity to lend such aid when the necessities of the case so require, or the ends of justice be promoted thereby? Courts of bankruptcy cannot take any jurisdiction not expressly given by the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). Although they are courts of record, they have only a limited jurisdiction—such jurisdiction as the statute gives, and no other. Judge Hammond, of Tennessee, in Re Williams (D. C.) 123 Fed. 321, 323, before whom an application was made by the trustee in bankruptcy in Colorado for an order and a subpœna for an examination before the referee in Tennessee of certain officers of the Security Bank in that state "concerning the acts, conduct, and property of the bankrupt," after explaining his understanding of the meaning of auxiliary and ancillary proceedings as applied in courts of law and equity, said:

"It is not necessary to go into the technicalities of any of these examples of ancillary or auxiliary jurisdiction, because the existing bankruptcy statute is absolutely destitute of any hint of such a jurisdiction in aid of proceedings in bankruptcy pending in another district or court of bankruptcy. Possibly Congress might have adopted such a scheme of bankruptcy, and might have made every District Court in the United States a kind of administrator ad colligendum of the assets within that district in aid of the original court of bankruptcy charged with the administration of the bankrupt's property; but Congress has done no such thing, and therefore the District Courts in the several states have no such ancillary or auxiliary jurisdiction as has been invoked by these applications. The scheme of the bankruptcy statute is that the trustee is equipped with the fullest possible title to all property of the bankrupt, to all his rights, remedies, and causes of action, and certain specific causes

of action have been created for him or given by the statute, as where he may bring suits that the creditors only could have brought without the statute. Besides, he is armed with all the legal rights and remedies that the bankrupt had, or that any other owner might have, to enforce his title and his rights of action; and these he is required to use for the collection of the property and assets of the bankrupt under the guidance of the court which appoints him. He may bring his action of replevin for his race horses or other property; or his action at law for the recovery of money; or his bills in equity for the enforcement of trusts or other equitable remedies; or his libels in admiralty, where that jurisdiction applies; and he must resort to the courts of the states, or to the federal courts in other states, according to his right to enter each or either of them, for enforcing whatever remedies he may have as owner of the bankrupt's estate, and to bring whatever causes of action may be necessary; and this is all he can do in the collection of the bankrupt's property for the payment of his debts. Simply because he is trustee in bankruptcy, or simply because he is engaged in the administration of a bankrupt's estate in one district, he is not authorized to go to another district, or to a bankruptcy court in another district, and ask for ancillary or auxiliary aid of any kind which is not comprehended within the same legal and equitable remedies belonging to other owners, as above set forth. Judge Trieber, of the District Court of Arkansas, has taken this view of the subject in a case involving this very bankruptcy, and with that judgment I fully concur. In re Williams (D. C.) 120 Fed 38. Hence the application that has been made for an order to be entered here for the examination of the parties above mentioned and the accompanying subpœna to enforce the same must be refused."

There is still another question involved herein· which this court ought to consider. Counsel for the creditors in this state declare it to be their intention, in the event that this court declines to proceed in the determination of their rights on account of the prior proceedings in another court; to petition the court in Maine to transfer the proceedings pending there to this court, on the ground that such transfer and consolidation would be for the greater convenience of all parties interested. Section 32, of the bankruptcy act (Act July 1, 1898, c. 541, subc. 4, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3434]), provides:

"In the event petitions are filed against the same person, or against different members of a partnership, in different courts of bankruptcy each of which has jurisdiction, the cases shall be transferred, by order of the courts relinquishing jurisdiction, to and be consolidated by the one of such courts which can proceed with the same for the greatest convenience of parties in interest."

It would be out of place for this court to intimate any opinion as to the character of cases to which that section is intended to apply, or express any views whatever as to which court would, under all the circumstances of this case, be most convenient for the benefit of all concerned. But it will not be improper for this court to stay all the proceedings herein for such reasonable time as may be necessary to enable the creditors who instituted the proceedings in this state to apply to the court in Maine for a transfer. In making this order none of the parties can be injured or affected in their rights. No order of dismissal will, therefore, be made, and no order will be at present entered refusing the prayer of petitioner, Butler.

This result seems to be authorized by form No. 6, promulgated by the Supreme Court of the United States (Brandenburg on

Bank. § 1241), and is sanctioned by In re Waxelbaum (D. C.) 98 Fed. 589.

The proceedings herein will remain in statu quo for the period of 40 days, to enable the creditors in this state to apply to the District Court of Maine for a transfer of the proceedings herein.