In re SUNSET HILL HOLDING CORPORATION.

District Court, S. D. New York.
Aug. 6, 1931.

Henry Woog, of New York City, for opposing creditor.

Joseph P. Shelby, of New York City (Archibald Palmer, of New York City, of counsel), for petitioning creditors.

PATTERSON, District Judge.

I will confirm the special master's report recommending adjudication.

An involuntary petition was filed on April 14, 1931. The alleged bankrupt did not answer, but one Lent, who claims to be a creditor, interposed an answer denying that the alleged bankrupt had committed any of the acts of bankruptcy charged in the petition. Lent is the president of the alleged bankrupt. Later an amended petition was filed, to which Lent also answered, and the issues were referred to one of the referees as special master. The special master has re-

ported in favor of the petitioning creditors, and the matter is before the court on motion to confirm the report.

It was shown that the alleged bankrupt owned real estate in Westchester county, used as a golf course and country club; that the real estate, when acquired in 1926 by Lent, had cost about $43,000; that at the time of filing the petition and for more than a year prior to that time it was incumbered by mortgages totaling over $280,000, on which no interest had been paid for one or two years; that the taxes had not been paid for three years; and that in January, 1931, foreclosure proceedings on the third mortgage had been commenced, the alleged bankrupt consenting to the appointment of a receiver. Certain personal property had also been owned by the alleged bankrupt, but it had all been sold on execution sale on December 17, 1930, bringing $1,100. It was further shown by the petitioning creditors that at the time of filing the petition there were unsatisfied judgments against the alleged bankrupt in the amount of about $29,000, several of these judgments having been entered as late as February and March, 1931, and that in addition thereto it owed at least $32,000 to merchandise creditors. Its bank account seems to have ranged, during the four months' period, from 5 cents to $10.

At the hearings before the referee, neither the alleged bankrupt nor the opposing creditor, its president, produced records from which the true financial condition of the alleged bankrupt could be ascertained.

■ It seems to me that the alleged bankrupt committed numerous acts of bankruptcy within four months from filing of the petition and that the record satisfactorily shows that it was insolvent at all times within the four months' period. The sheriff's sale on December 17, 1930, was an act of bankruptcy under subdivision (3) of paragraph a, section 3, of the act, 11 USCA § 21 (a) (3) provided of course the bankrupt was then insolvent. The judgments suffered in January and February, 1931, became liens on the real estate and were acts of bankruptcy under subdivision (4), provided again the alleged bankrupt was insolvent at these times. While there was no direct proof as to the value of the real estate during this period, the evidence that it was incumbered to the extent of over $300,000 by way of mortgages and judgment liens, the repeated defaults in payment of interest and taxes, the pending foreclosure, taken with the other proof in the case, were sufficient warrant for the ref-

eree's finding that the equity of redemption was worthless. If the situation were otherwise, the opposing creditor, who was the president of the alleged bankrupt and the person most familiar with its affairs, would have had no difficulty in proving it; yet he offered no proof in support of solvency. The significance of this as a matter of common sense is plain, regardless of whether or not the burden of proving solvency rested upon him under section 3d of the act, 11 USCA § 21(d).

The facts brought out showed that the affairs of the alleged bankrupt had long been in parlous condition. Insolvency was indicated, both at the time of the preferences and at the time when the petition was filed. In re Elmira Steel Co. (D. C.) 109 F. 456; In re Miller (D. C.) 104 F. 764.

The report will therefore be confirmed and an order of adjudication entered.