**AHRENS et, Plaintiffs-Appellees, v. EGAN,
Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 2139.   Decided May 4, 1951.

Landis, Ferguson, Bieser & Greer, Dayton, Rowan A. Greer,
of Counsel, for plaintiffs-appellees.

Matthews & Altick, Dayton, Francis S. McDaniel, of Counsel,
for defendant-appellant.

## OPINION

By HORNBECK, PJ:

This is an appeal on questions of law from a judgment of the Common Pleas Court affirming a money judgment of the Municipal Court for plaintiffs.

The municipal judge, a jury having been waived, found for the plaintiffs and upon request of the defendant made separate findings of fact and law. The court found that plaintiff, Ahrens, on the night of accident, at about one o'clock, was driving his Ford automobile in a westerly direction on Lee Street in the City of Dayton; that defendant was driving his Buick sedan in a northerly direction on Webster Street; that the cars came into collision in the intersection of these streets; that the area wherein the collision occurred was not a "business district,"; that plaintiff's speed did not exceed 35 miles per hour and he kept a look out for other traffic; that the defendant approached and entered the intersection on a red traffic signal; that he observed the Ford automobile but, nevertheless, proceeded on into the intersection * * * and that defendant's conduct in so proceeding into the intersection was the sole proximate cause of the collision."

Appellant in his brief assigns two questions for determination:

1. Was the street upon which appellee, Ahrens, was proceeding in a business district?

2. Was the plaintiff-appellee, Ahrens, proceeding unlawfully at the time of the accident, so as to deprive him of the right of way?

The trial judge, and the Common Pleas Judge on appeal, determined that the district in which the accident occurred was not a "business district" and that the speed at which the trial judge found the plaintiff was proceeding, 35 miles per hour, was not prima facie unlawful.

We consider the errors assigned in reverse order. Was the plaintiff-appellee, Ahrens, proceeding unlawfully at the time of the accident, so as to deprive him of the right of way?

If it be said, as a matter of law, that the plaintiff was prima facie negligent or even that he was driving unlawfully as he approached the intersection where the collision occurred, we are of opinion that the specific finding of the Court that the sole proximate cause of the collision was the defendant's negligence, in connection with the other findings, is sufficient

to support the judgment. **Glasco v. Mendelman, 143 Oh St 649.**

We pass upon the first assignment of error only because of the requirement that we pass upon all errors assigned and not because it is controlling of our judgment.

Was the street upon which the plaintiff was proceeding in a "business district?"

"Business district" as defined in §6307-2 GC is:

"The territory fronting upon a street or highway, including the street or highway, between successive intersections within municipal corporations where 50 per cent or more of the frontage between such successive intersections is occupied by buildings in use for business, * * *."

Several aspects of the section of the code were considered and discussed by the trial judge, and argued by counsel. The trial judge gave weight to the fact that the collision here involved took place in the late night season by reason of which there would be little or no vehicular or pedestrian traffic in the vicinity of the Airtemp building. There is logic in this position and it might well be the basis of classification of "business district" in the statute but it is not carried into the law. If a section of a municipality is a "business district" by §6307-2 GC it is such a district at all times of the day.

Counsel assume that the record raises the other questions argued, viz.: that the Airtemp building, together with other business buildings, occupy more than 50 per cent of the space between Webster and Daniel Streets on Leo Street,. that the Airtemp building is well set back from Leo Street and that at the **time of the accident** it was used as a "manufacturing organization." (Emphasis ours.) The record has to be read with much liberality to find that any of these later propositions is fully developed. It is probable that counsel and the trial judge drew upon their personal knowledge of the physical conditions in the vicinity of the accident and were not fully cognizant of the meager development of the operative facts in the record.

We assume that the Airtemp building occupied 50 per cent of the north side of Leo Street between Webster and Daniel Streets. The record shows that it sets back from Leo Street, but not how far back. It also appears that there is an entrance to the building from Leo Street. Does the building have frontage on Leo Street?

A strict interpretation of the word frontage would be "abutting upon." In the law relating to street assessments for improvements thereon the Code uses the terms "abutting,

adjacent, and contiguous or other specially benefitted lots or lands * * *," although such assessments are commonly spoken of as "front foot assessments." We are of opinion that the Airtemp building has frontage on Leo Street for two reasons.

1. Because there is an entrance into this building from Leo Street and there is no structure between the building and Leo Street.

2. The language employed in defining "Residence District" in §6307-2 GC, wherein the term frontage is used, is the same as it is in defining "Business District." If "frontage" is given a restricted meaning we seldom would have a residence district because of the prevailing practice of erecting residential structures back from the street line.

Was the Airtemp building used for business? We believe that it was.

Succeeding the definition of "Business district" in the statute, §6307-2 GC, is that of "Residence district" which is, in part, "The territory, not comprising a business district, fronting on a street or highway, * * *." There is no other specific classification of districts. The legislation under consideration is found in the Uniform Traffic Act under the heading Police Regulations and manifestly has for its purpose the regulation of traffic as related to the safety of the public. Business establishments in their operations cause many persons to move into, from and about them and thereby intensify the flow of traffic. The Airtemp building which must accommodate many operatives as a manufacturing organization would normally fall into the classification of a business establishment. It certainly would not be considered as of residential character. Funk & Wagnalls New Standard Dictionary defines business as, First, a pursuit or occupation. Second, any occupation connected with the details of trade or industry; also commercial affairs, as, the banking business. In Re L. Myers Steel Co., 109 Fed. 456, 470, recognized a company which manufactured iron and steel products as a business concern. We are in no doubt that the Airtemp building is a structure in which business is conducted.

We hold that the record requires that the territory in the vicinity of the place where the collision occurred be classified as a "business district."

No prejudicial error appearing, the judgment will be affirmed.

WISEMAN and MILLER, JJ, concur.